******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JOSE PAULINO *v.* COMMISSIONER OF CORRECTION
(AC 35691)

Gruendel, Lavine and Dupont, Js.

*Argued October 9, 2014—officially released January 27, 2015*

(Appeal from Superior Court, judicial district of
Tolland, geographical area number nineteen,
Solomon, J.)

*Neal Cone*, senior assistant public defender, for the
appellant (petitioner).

*Nancy L. Walker*, deputy assistant state's attorney,
with whom, on the brief, were *Brian Preleski*, state's
attorney, and *Richard K. Greenalch, Jr.*, special deputy
assistant state's attorney, for the appellee (respondent).

*Opinion*

DUPONT, J. The petitioner, Jose Paulino, appeals from the denial of his petition for certification to appeal from the judgment of the habeas court dismissing without prejudice his petition for a writ of habeas corpus. The underlying basic question for our resolution is whether the habeas court properly denied the petitioner's certification to appeal because of a lack of subject matter jurisdiction due to the fact that the court could not provide any relief to the petitioner and the issue was, therefore, moot. We conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal and, accordingly, we dismiss the appeal.

The following facts and procedural history are relevant to our decision. The petitioner is a citizen of the Dominican Republic who had visited the United States periodically and had married a woman who lived in Hartford. In 2008, following a trial to the court, the petitioner was convicted of possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b) and possession of narcotics with intent to sell within 1500 feet of a public school in violation of General Statutes § 21a-278a (b). The trial court then sentenced the petitioner to three year terms of incarceration on each charge, to be served consecutively, for a total effective sentence of six years of imprisonment. The petitioner appealed the convictions to this court, claiming that the trial court had abused its discretion by failing to order a competency hearing for him and by depriving him of the right to a fair trial. *State* v. *Paulino*, 127 Conn. App. 51, 52, 12 A.3d 628 (2011). This court affirmed the convictions on March 1, 2011. Id., 70.

On December 14, 2011, while incarcerated at Osborn Correctional Institute in Somers, the petitioner filed a handwritten pro se petition for writ of habeas corpus. In his petition, the petitioner claimed that the attorney representing him at the criminal trial had provided ineffective assistance of counsel. The petitioner also alleged that the government unlawfully entered his home, without a warrant or probable cause, where he kept large sums of money legally earned, and unlawfully intercepted and monitored telephone conversations with a man known to the petitioner as a heroin dealer. Finally, the petitioner made a claim of actual innocence and asked the court to order a new trial or release him.

On June 21, 2012, the United States Immigration Court issued an oral decision finding the petitioner removable as charged. In particular, the immigration court first found that "removability has been established by clear and convincing evidence as a non-immigrant overstay." The immigration court then found that the petitioner's "conviction for possession with intent

to sell narcotics is both an aggravated felony and an offense relating to a controlled substance." Accordingly, the immigration court ordered that the petitioner be "removed to the Dominican Republic." The petitioner then filed an appeal from that decision, noting his pending habeas corpus action in state court. The Board of Immigration Appeals (board) affirmed the decision and dismissed his appeal on October 18, 2012, reasoning that "the fact that the respondent may be pursuing post-conviction relief in the form of a collateral attack on his conviction in state criminal court does not affect its finality for federal immigration purposes." The petitioner appealed that dismissal to the United States Court of Appeals for the Second Circuit on December 14, 2012, which subsequently dismissed the appeal on May 14, 2013.

On January 11, 2013, while the immigration appeal was still pending in the Second Circuit, the habeas court held a status conference at which the petitioner's habeas counsel informed the court that the petitioner had been deported.[1] On the basis of this information, the habeas court dismissed the petitioner's habeas petition without prejudice.[2] On January 17, 2013, the petitioner's habeas counsel filed a petition for certification to appeal. The habeas court denied the petition for certification to appeal on March 13, 2013. This appeal followed.[3]

On appeal, the petitioner claims that the habeas court abused its discretion by denying certification to appeal. In response, the respondent, the Commissioner of Correction, argues that this court does not need to reach that issue because there is a threshold issue that is dispositive of the appeal. Specifically, the respondent argues that the Second Circuit's dismissal of the immigration appeal, together with the petitioner's failure to show a reasonable possibility that further habeas proceedings would provide practical relief, render this appeal moot. While we agree with the respondent that the petitioner has failed to show a reasonable possibility that further habeas proceedings would provide practical relief, we disagree with the respondent's argument and instead conclude that the habeas court did not abuse its discretion in denying certification to appeal.

"We begin by setting forth the applicable standard of review and procedural hurdles that a petitioner must surmount to obtain appellate review of the merits of a habeas court's denial of a habeas petition following denial of certification to appeal. In *Simms* v. *Warden*, 229 Conn. 178, 187, 640 A.2d 601 (1994), [our Supreme Court] concluded that . . . [General Statutes] § 52-470 (b) prevents a reviewing court from hearing the merits of a habeas appeal following the denial of certification to appeal unless the petitioner establishes that the denial of certification constituted an abuse of discretion by the habeas court. In *Simms* v. *Warden*, 230 Conn.

608, 615–16, 646 A.2d 126 (1994), [our Supreme Court] incorporated the factors adopted by the United States Supreme Court in *Lozada* v. *Deeds*, 498 U.S. 430, 431–32, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991), as the appropriate standard for determining whether the habeas court abused its discretion in denying certification to appeal. This standard requires the petitioner to demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . A petitioner who establishes an abuse of discretion through one of the factors listed above must then demonstrate that the judgment of the habeas court should be reversed on its merits. . . . In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. . . .

"The conclusions reached by the trial court in its decision to dismiss [a] habeas petition are matters of law, subject to plenary review. . . . [When] the legal conclusions of the court are challenged, [the reviewing court] must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record." (Citation omitted; internal quotation marks omitted.) *McMillion* v. *Commissioner of Correction*, 151 Conn. App. 861, 868–70, 97 A.3d 32 (2014).

As noted previously, the habeas court dismissed the petition for a writ of habeas corpus without prejudice, noting that the court lacked jurisdiction to hear the petition because of the petitioner's deportation. "Mootness . . . implicates subject matter jurisdiction, which imposes a duty on the [trial] court to dismiss a case if the court can no longer grant practical relief to the parties. . . . Mootness presents a circumstance wherein the issue before the court has been resolved or had lost its significance because of a change in the condition of affairs between the parties. . . . A case becomes moot when due to intervening circumstances a controversy between the parties no longer exists." (Citations omitted; internal quotation marks omitted.) *We the People of Connecticut, Inc.* v. *Malloy*, 150 Conn. App. 576, 581, 92 A.3d 961, cert. denied, 314 Conn. 919, 100 A.3d 850 (2014).

"Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable . . . . Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being

adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant. . . . A case is considered moot if [the trial] court cannot grant the appellant any practical relief through its disposition of the merits . . . ." (Internal quotation marks omitted.) *Wyatt Energy, Inc.* v. *Motiva Enterprises, LLC*, 308 Conn. 719, 736, 66 A.3d 848 (2013).

This court addressed the issue of whether a petitioner's deportation renders a case moot in *Quiroga* v. *Commissioner of Correction*, 149 Conn. App. 168, 87 A.3d 1171, cert. denied, 311 Conn. 950, 91 A.3d 462 (2014). In *Quiroga*, the petitioner, a citizen of Uruguay, was convicted of possession of narcotics and larceny in the first degree. Id., 170. The petitioner in that case filed a petition for a writ of habeas corpus, alleging that his representation regarding the larceny conviction was ineffective. Id., 171. Following a trial, the habeas court denied the petition and the petitioner appealed. Id., 172. During the pendency of that appeal, however, the petitioner was permanently removed to Uruguay. Id., 172–73. On appeal, this court relied on our Supreme Court's decision in *State* v. *Aquino*, 279 Conn. 293, 901 A.2d 1194 (2006),[4] finding that there was "no evidence in the record before us that the petitioner's guilty plea to larceny in the first degree was the *sole* reason for his deportation. To the contrary, the immigration judge specifically found that removability on the ground of the petitioner's narcotics convictions had been established by clear and convincing evidence." (Emphasis in original; internal quotation marks omitted.) *Quiroga* v. *Commissioner of Correction*, supra, 173. Furthermore, this court rejected the petitioner's argument that absent the larceny conviction, "he would have been eligible for a possible cancellation of removal pursuant to 8 U.S.C. § 1229b." Id., 173–74. This court dismissed the petitioner's appeal, holding that "*Aquino* requires proof that the larceny plea was the exclusive basis of the petitioner's deportation, rather than a primary or likely one." Id., 174.

The present case is similar to *Quiroga*. Here, the petitioner was convicted of two drug related offenses. After the petitioner served his sentences for these convictions, the immigration court ordered that he be removed from the United States. There is no evidence in the record before us, nor was there any evidence presented to the habeas court, to suggest that the petitioner's convictions were the sole reason for his deportation. To the contrary, the immigration court specifically found that removability on the ground of the petitioner's nonimmigrant overstay had "been established by clear and convincing evidence." In the absence of any such evidence, we conclude that the petitioner has failed to demonstrate that the issue of whether his habeas petition was moot is debatable among jurists of reason, that a court could resolve that issue differ-

ently, or that the issue deserves encouragement to proceed further.

The petitioner here nevertheless maintains that we can retain jurisdiction over his appeal pursuant to the collateral consequences doctrine. We disagree.

"Under the collateral consequences doctrine, this court may retain jurisdiction and consider a claim that otherwise has been rendered moot when a litigant shows there is a reasonable possibility that prejudicial collateral consequences will occur. . . . Where there is no direct practical relief available from the reversal of the judgment . . . the collateral consequences doctrine acts as a surrogate, calling for a determination whether a decision in the case can afford the litigant some practical relief in the future. The reviewing court . . . determines, based upon the particular situation, whether, the prejudicial collateral consequences are reasonably possible." (Citation omitted; internal quotation marks omitted.) *State* v. *Chavarro*, 130 Conn. App. 12, 18, 21 A.3d 541 (2011). "[T]his standard requires the [litigant] to demonstrate more than an abstract, purely speculative injury, but does not require the [litigant] to prove that it is more probable than not that the prejudicial consequences will occur." (Internal quotation marks omitted.) *Quiroga* v. *Commissioner of Correction*, supra, 149 Conn. 176.

The petitioner argues that as a collateral consequence of the denial of his petition for certification to appeal, he is permanently barred from reentering the United States. At oral argument before this court, the petitioner's counsel argued that if the petitioner's drug related convictions were overturned during habeas corpus proceedings, the petitioner would only be barred from readmission to the United States for the ten years applicable to the visa overstay. See 8 U.S.C. § 1182 (a) (9) (A) (ii). The petitioner, however, has failed to produce any evidence that, in the absence of his convictions, he would be permitted to return to the United States. Furthermore, the petitioner failed to produce any such evidence for the habeas court prior to its dismissal of the petitioner's habeas petition. Therefore, we conclude that the petitioner has failed to demonstrate that the habeas court abused its discretion in denying his petition for certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] The record does not indicate the exact date that the petitioner was deported. It is clear, however, that he had served his entire sentence and was released on parole from prison on August 12, 2012. Furthermore, the record indicates that he was no longer in the United States on January 11, 2013.

[2] "A dismissal without prejudice terminates litigation and the court's responsibilities, while leaving the door open for some new, future litigation." (Internal quotation marks omitted.) *Commission on Human Rights & Opportunities* v. *Torrington*, 96 Conn. App. 313, 319, 901 A.2d 46, cert. denied, 280 Conn. 929, 909 A.2d 957 (2006). "Dismissal without prejudice" is defined in Ballentine's Law Dictionary as "[a] voluntary dismissal of an

action or proceeding without an adjudication of the cause that would prevent the bringing of a new action upon the same cause. . . . An order of dismissal of an action reciting that it is without prejudice, the effect of which is to prevent the dismissal from operating as a bar to any new suit which the plaintiff might thereafter desire to bring on the same cause of action. . . ." Ballentine's Law Dictionary (3d Ed. 1969). Although this definition can be considered "black letter law," the instant case is an example of a dismissal which cannot be resurrected because the immigration court ordered the petitioner's deportation due to his visa overstay and both the Board of Immigration Appeals and the Second Circuit dismissed the petitioner's appeal of such deportation.

[3] We note that the petitioner's immigration appeal was dismissed by the Second Circuit after the habeas court denied petitioner's certification to appeal but before the present appeal. On May 14, 2013, the United States Court of Appeals for the Second Circuit dismissed the petitioner's petition for review of the board's dismissal of his appeal. The court reasoned that it lacked jurisdiction to review the petition, as it was "deposited in the internal mailing system of Petitioner's detention facility more than 30 days after the date of the [board's] decision."

[4] In *Aquino*, our Supreme Court specifically addressed whether an appeal is moot when a litigant is deported during the pendency of his appeal. *State* v. *Aquino*, supra, 279 Conn. 293. The court held that "in the absence of any evidence that the defendant's guilty plea was the sole reason for his deportation, the defendant's appeal must be dismissed as moot. The defendant did not produce any evidence at the hearing on his motion to withdraw his guilty plea—indeed, he did not even claim—that he would be deported solely as the result of his guilty plea. While this appeal was pending, the defendant was deported. There is no evidence in the record as to the reason for his deportation. If it was not the result of his guilty plea alone, then this court can grant no practical relief and any decision rendered by this court would be purely advisory. . . . We conclude, therefore, that the appeal must be dismissed on the ground that the defendant has failed to establish that his claim is not moot." (Citations omitted; footnotes omitted; internal quotation marks omitted.) Id., 298–99; see also *State* v. *Chavarro*, 130 Conn. App. 12, 17–18, 21 A.3d 541 (2011) (court held that defendant's appeal was moot because he "failed to establish that his deportation was the result of his guilty plea alone" [internal quotation marks omitted]).

————————————————————