**Konstantin V. MANZAR, Petitioner,**

**v.**

**Michael B. MUKASEY, Attorney General, Respondent.**

**No. 06–73291.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 5, 2007.

Filed Feb. 13, 2008.

Nicholas W. Marchi, Esq., Carney & Marchi, PS, Seattle, WA, for Petitioner.

Ronald E. LeFevre, Chief Counsel, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, WWS–District Counsel, Immigration and Naturalization Service, Office of the District Counsel, Seattle, WA, David V. Bernal, Attorney, Jeffery R. Leist, Esq. FAX, U.S. Department of Justice, Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before: McKEOWN and CLIFTON, Circuit Judges, and SCHWARZER,* District Judge.

MEMORANDUM **

Konstantin V. Manzar petitions for review of an order of the Board of Immigration Appeals ("BIA") dismissing his appeal of the Immigration Judge's ("IJ") orders finding him removable and denying his application for asylum, withholding of removal, or withholding under the Convention Against Torture ("CAT"). We deny the petition.

## I. REMOVABILITY

Manzar argues that the BIA erred in finding that he was removable for having committed a crime involving moral turpitude. Manzar was convicted in Washington Superior Court of felony harassment for threatening to kill someone in violation of Wash. Rev.Code. § 9A.46.020. The BIA has held that the intentional transmission of a "threat to kill another or inflict physical injury against the victim" is "evidence of a vicious motive or a corrupt mind" and qualifies as a crime involving moral turpitude. *Matter of Ajami,* 22 I. & N. Dec. 949, 952 (B.I.A.1999). We review de novo the question of whether a state statutory crime constitutes a crime involving moral turpitude. *Carty v. Ashcroft,* 395 F.3d 1081, 1083 (9th Cir.2005).

Because the statute of conviction may be broader than the generic crime involving moral turpitude, we utilize the modified categorical approach to look beyond the language of the statute to a narrow specified set of documents, including a signed guilty plea, to determine whether the conviction was for a crime involving moral turpitude. *Tokatly v. Ashcroft,* 371 F.3d 613, 620 (9th Cir.2004). Manzar's signed guilty plea states: "On March 11, 2000, in King County, Washington, I knowingly made a threat to kill Kevan Dacey and my conduct did place him in reasonable fear that the threat would be carried out." Accordingly, Manzar's claim that there is no evidence in the record of conviction for threatening to kill someone is without merit.

## II. CONTINUANCE FOR ADJUSTMENT OF STATUS

After he was found removable, Manzar applied to adjust his status to lawful permanent resident as the son of a naturalized

---

* The Honorable William W. Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36–3.

U.S. citizen. Manzar argues that his application for a continuance for an adjustment of status under Immigration and Nationality Act ("INA") § 245(a), 8 U.S.C. § 1255(a), was wrongly denied and constituted a violation of his procedural due process rights. We review a decision to grant or deny a continuance for abuse of discretion. *Vargas–Hernandez v. Gonzales,* 497 F.3d 919, 923 (9th Cir.2007). There may be some instances where the denial of a request for a continuance "is so arbitrary as to violate due process." *Rios–Berrios v. INS,* 776 F.2d 859, 862 (9th Cir.1985) (internal quotation marks and citation omitted).

▪ The IJ denied Manzar's application for an adjustment of status because Manzar was inadmissible as an alien convicted of a crime involving moral turpitude; he was ineligible to apply for a waiver of inadmissibility at the time because he had not resided in the United States for at least seven years; and a visa number based on his third-preference family-sponsored visa category was not immediately available to him. At the time, visa numbers in Manzar's category were only available for petitions filed on or before December 22, 1997. Although Manzar had resided in the United States for seven years by the time his appeal reached the BIA, a visa number was not then immediately available to him, as visa numbers for Manzar's category were only being issued for petitions filed on or before August 1, 1998. It was not an abuse of discretion for the BIA to deny Manzar's request for a continuance of at least seven years. *See Gonzalez v. INS,* 82 F.3d 903, 908 (9th Cir.1996) (no abuse of discretion in denying indefinite continuance to evaluate changing conditions in native country); *Witter v. INS,* 113 F.3d 549, 555–56 (5th Cir.1997) (no abuse of discretion in denying continuance of "indefinite duration" for

resolution of criminal proceedings). Nor was the denial "so arbitrary as to violate due process." *Rios–Berrios,* 776 F.2d at 862.

## III.  ASYLUM

Manzar applied for asylum, which also constitutes an application for withholding of removal and withholding under the CAT. *See* 8 C.F.R. § § 1208.3(b), 1208.13(c)(1). Manzar claimed that he would be subject to imprisonment for avoiding mandatory military service in Russia while he was living in the United States. The IJ and the BIA found that the application was untimely but also concluded that, even if timely, the application was meritless because mandatory military service and the possibility of imprisonment for evasion of service do not constitute persecution.

Manzar argues that the BIA erred in finding that his asylum petition was untimely. An applicant for asylum must file his application within one year of entering the United States. INA § 208(a)(2)(B), 8 U.S.C. § 1158(a)(2)(B). Failure to file within one year may be excused by extraordinary circumstances as long as the application is filed within a reasonable time given those circumstances. 8 C.F.R. § 1208.4(a)(5). "Extraordinary circumstances" include lawful immigrant or nonimmigrant status until a reasonable period before the filing of the asylum application. 8 C.F.R. § 1208.4(a)(5)(iv). Manzar's conditional status as a nonimmigrant child of a fiancé of a U.S. citizen was terminated on February 2, 2002, but he did not file his asylum application until September 15, 2003, more than eighteen months later. Manzar offered no explanation for the eighteen-month delay nor evidence of extraordinary circumstances. There was no error in the BIA's finding that Manzar's asylum application was untimely.

## IV. WITHHOLDING OF REMOVAL AND CAT RELIEF

We review a denial of withholding of removal for substantial evidence. *Kaur v. Ashcroft*, 379 F.3d 876, 884 (9th Cir. 2004). To be eligible for withholding of removal, Manzar must show that it is "more likely than not that he would be subject to persecution" on account of race, religion, nationality, membership in a particular social group, or political opinion. *Al–Harbi v. INS*, 242 F.3d 882, 888 (9th Cir.2001) (internal quotation marks and citation omitted); *see also* 8 C.F.R. § 1208.16(b)(2). Mandatory military service and the possibility of punishment for evading service do not by themselves constitute persecution. *Barraza Rivera v. INS*, 913 F.2d 1443, 1450 (9th Cir.1990). Manzar's testimony that he may face imprisonment for avoiding military service, even if credible, is not sufficient to establish persecution.[1] Manzar did not show that he would receive disproportionately severe punishment on account of a protected ground, or that he would be required to engage in inhuman conduct as part of his military service. *Id.* Substantial evidence thus supported the BIA's order.

Similarly, Manzar is not eligible for relief under the CAT, because he presented no evidence that "he is more likely than not to suffer intentionally-inflicted cruel and inhuman treatment" if removed to Russia. *Nuru v. Gonzales*, 404 F.3d 1207, 1221 (9th Cir.2005) (internal quotation marks and citation omitted); *see also* 8 C.F.R. § 1208.16(c)(2).

For the foregoing reasons, the petition is denied.

---

1. The IJ found that Manzar's testimony regarding the possibility of prosecution for evading military service was not credible. His testimony regarding his contacts with the Russian draft board was vague, inconsistent, and lacking in plausibility. The IJ also noted that Manzar's passport was inspected when he left Russia and that the Russian government knew that he had legally immigrated to the United States. The IJ had "serious doubts" about whether Manzar would face prosecution for evading military service.

