******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JEAN ST. JUSTE *v.* COMMISSIONER
OF CORRECTION
(AC 33424)

Alvord, Keller and Schaller, Js.

*Argued October 14, 2014—officially released January 27, 2015*

(Appeal from Superior Court, judicial district of
Tolland, T. Santos, J.)

*Justine F. Miller*, assigned counsel, for the appellant (petitioner).

*Adam E. Mattei*, deputy assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Gerard P. Eisenman*, former senior assistant state's attorney, for the appellee (respondent).

*Opinion*

KELLER, J. Following a grant of certification to appeal pursuant to General Statutes § 52-470 (g), the petitioner, Jean St. Juste, appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. The petitioner claims that the court improperly rejected his claim that his trial counsel had rendered ineffective assistance by virtue of the fact that he had failed to inform the petitioner that if he were convicted of the crime of assault in the second degree, his conviction would result in his certain deportation. We dismiss the appeal as moot.

The following facts and procedural history are relevant to the present appeal. On July 26, 2010, the petitioner filed an amended petition for a writ of habeas corpus in which he alleged that, on December 17, 2007, he pleaded guilty to assault in the second degree in violation of General Statutes § 53a-60 (a) (2), and guilty under the *Alford* doctrine[1] to possession of a sawed-off shotgun in violation of General Statutes § 53a-211. He was represented by Attorney Howard Ignal. On January 28, 2008, he was sentenced pursuant to a plea agreement to a total effective sentence of five years incarceration, execution suspended after eighteen months, followed by five years of probation. On July 27, 2009, the petitioner, represented by Attorney Anthony Collins, filed a motion to withdraw his guilty pleas on the ground that at the time he entered them, he did not understand their immigration consequences. On November 17, 2009, the court denied the motion.

In his two count amended petition, the petitioner alleged that Ignal rendered ineffective assistance of counsel because, among other deficiencies, he (1) failed to educate himself about the immigration consequences of the pleas, (2) misadvised the petitioner with respect to the immigration consequences of the pleas, and (3) failed to meaningfully discuss with the petitioner what immigration consequences could and/or would flow from the pleas. The petitioner alleged that Ignal's representation was below that displayed by attorneys with ordinary training and skill in the criminal law, and that but for such representation, he would not have pleaded guilty and he would have resolved the case in a way that would not result in "deportation consequences." In the second count of his petition, the petitioner alleged that his pleas were not knowingly, voluntarily, and intelligently made because he made them under the mistaken belief that his conviction would not subject him to deportation. The petitioner alleged that "[a]s a result of his conviction, [he] has been ordered removed from this country by an immigration judge, and the judge's order has been affirmed by the Board of Immigration Appeals." Additionally, the petitioner alleged that "[t]he basis for the removal order was the conviction for assault in the second degree and possession of a sawed-

off shotgun."[2]

Following an evidentiary hearing, the habeas court orally rendered its decision denying the petition.[3] In relevant part, the court stated that it accepted as true the testimony of the petitioner's trial attorney, Ignal. The court stated: "[Ignal] clearly saw all of the problems with this case, and they all spelled the word 'immigration.' From day one, I think, he was alerted to this and did everything he could, from what I can see, to try to avert the ultimate result." The court found that Ignal was well aware of the adverse consequences of the pleas insofar as they involved deportation, and that he had thoroughly discussed that issue with the petitioner. The court rejected the claim of ineffective assistance of counsel. Later, the court granted the petitioner's petition for certification to appeal. The petitioner brought the present appeal on May 4, 2011. We observe that the petitioner's claim on appeal is limited to the representation afforded him in connection with his guilty plea for assault in the second degree.

The core argument set forth in the petitioner's principal appellate brief is that the judgment of the habeas court should be overturned because, pursuant to *Padilla* v. *Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010), Ignal was deficient in that he failed to advise him, prior to entering the plea agreement, "that his [assault] conviction would make him subject to automatic deportation." In *Padilla*, the United States Supreme Court held that the sixth amendment to the United States constitution requires an attorney for a criminal defendant to provide advice about the risk of deportation arising from a guilty plea. Id., 373–74. The respondent, the Commissioner of Correction, argues that *Padilla* does not apply retroactively to the petitioner, who was convicted well before *Padilla* was announced on March 31, 2010. Moreover, the respondent argues that, even if *Padilla* applies, the petitioner has misinterpreted its holding, has failed to prove that Ignal did not meet the standard of representation mandated by *Padilla*, and has failed to prove that he was prejudiced by Ignal's performance.

After the parties filed their briefs in this appeal, but prior to the time of oral argument, the United States Supreme Court, in *Chaidez* v. *United States*, U.S. , 133 S. Ct. 1103, 1107–13, 185 L. Ed. 2d 149 (2013), held that *Padilla* does not apply retroactively to petitioners whose convictions had become final by the time that it announced its decision in *Padilla*. See also *Alcena* v. *Commissioner of Correction*, 146 Conn. App. 370, 374–75, 76 A.3d 742, cert. denied, 310 Conn. 948, 80 A.3d 905 (2013) (applying *Chaidez*). By way of supplemental briefing to address the effect of *Chaidez* on the present appeal, the respondent argues that Ignal's representation was not deficient when viewed in light of the law as it existed prior to *Padilla*. In his supplemental

brief, the petitioner acknowledges that *Padilla* does not apply, but argues that, even when evaluated in light of the law as it existed prior to *Padilla*, Ignal's representation was deficient.

Although *Chaidez* resolved the issue of whether *Padilla* applies in an evaluation of the representation that Ignal afforded the petitioner, we do not turn to an evaluation of Ignal's representation because we must address an issue of mootness raised by the respondent. This issue is related to the petitioner's prior status as a permanent legal resident, his subsequent deportation from the United States, and his criminal history.

In his brief before this court, the petitioner represents that he was in the United States as a permanent legal resident and that, after he served the eighteen month term of incarceration imposed by the trial court as a result of his conviction of assault in the second degree and possession of a sawed-off shotgun, he was detained in a federal facility pending his removal from the United States. Further, the petitioner represents, and it is not in dispute, that on April 15, 2011, he was deported to Haiti. Relying on the September 2, 2009 decision of the United States Immigration Court ordering the petitioner's deportation to Haiti, the respondent acknowledges that the petitioner's assault conviction was a factor in his deportation.

The respondent argues, however, that there is evidence that, even absent the assault conviction, the deported petitioner would not be eligible for lawful readmission into the United States. In this regard, the respondent draws our attention to the petitioner's criminal history involving not only the assault conviction for assault in the second degree underlying his petition for a writ of habeas corpus, but the fact that he previously was convicted of threatening in the second degree. The fact that this prior conviction occurred is not in dispute.

In support of a finding of mootness, the respondent argues that threatening in the second degree is a crime of moral turpitude that, pursuant to federal law, would preclude the petitioner's lawful readmission to the United States. The respondent argues that under the circumstances, in which the petitioner has been deported and the present appeal is unrelated to his conviction of threatening, this court cannot afford the petitioner any practical relief. The petitioner argues that the appeal is not moot because the prior conviction of threatening in the second degree would not bar his lawful readmission to the United States.

"Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [this] court's subject matter jurisdiction. . . . Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable . . . . Justiciability

requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant. . . . A case is considered moot if [the] . . . court cannot grant the appellant any practical relief through its disposition of the merits. . . . Because mootness implicates this court's subject matter jurisdiction, it raises a question of law over which we exercise plenary review." (Internal quotation marks omitted.) *Wyatt Energy, Inc.* v. *Motiva Enterprises, LLC*, 308 Conn. 719, 736, 66 A.3d 848 (2013). "It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . *An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal.* . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Emphasis added; internal quotation marks omitted.) *Wells Fargo Bank, NA* v. *Cornelius*, 131 Conn. App. 216, 219–20, 26 A.3d 700, cert. denied, 302 Conn. 946, 30 A.3d 1 (2011).

In support of the mootness argument, the respondent relies on our Supreme Court's decision in *State* v. *Aquino*, 279 Conn. 293, 901 A.2d 1194 (2006). The defendant in *Aquino*, who was residing illegally in the United States, appealed from the judgment of the trial court denying his motion to withdraw a guilty plea. Id., 294. He claimed that his plea was not knowingly and voluntarily made because his trial attorney failed to advise him that deportation would be the automatic and inevitable result of his plea. Id., 297. Our Supreme Court determined that the appeal was moot because the defendant had been deported during the pendency of the appeal for reasons that were not specified in the record. Id., 298–99. The court explained: "The defendant did not produce any evidence at the hearing on his motion to withdraw his guilty plea—indeed, he did not even claim—that he would be deported solely as the result of his guilty plea. While this appeal was pending, the defendant was deported. There is no evidence in the record as to the reason for his deportation. If it was not the result of his guilty plea alone, then this court can grant no practical relief and any decision rendered by this court would be purely advisory. . . . We conclude, therefore, that the appeal must be dismissed on the ground that the defendant has failed to establish that his claim is not moot." (Citations omitted; footnotes omitted; internal quotation marks omitted.) Id. The

court observed that the record suggested that the defendant's status as an illegal alien could have been the reason for his deportation. Id., 298 n.2. The court also stated: "Just as there is no evidence in the record before us establishing the reason for the defendant's deportation, however, there is no evidence to suggest that, in the absence of the guilty plea, the defendant would be allowed to reenter this country or become a citizen." Id., 298–99 n.3.

A recent decision of this court following *Aquino*, *Quiroga* v. *Commissioner of Correction*, 149 Conn. App. 168, 87 A.3d 1171, cert. denied, 311 Conn. 950, 91 A.3d 462 (2014), also is instructive. The petitioner in *Quiroga*, who had been admitted as a lawful permanent resident of the United States, was convicted, among other crimes, of larceny in the first degree following a plea of nolo contendere to that offense. Id., 170. The petitioner brought a petition for a writ of habeas corpus on the ground that his trial counsel rendered ineffective representation in that, among other things, she failed to advise him of the risk of deportation that resulted from his plea. Id., 171. The habeas court denied the petition and granted certification to appeal, and the petitioner appealed to this court. Id., 172.

This court in *Quiroga* dismissed the appeal as moot because, during the pendency of the appeal, the petitioner was permanently removed to Uruguay. Id., 172–73. This court observed that the record revealed that the United States Immigration Court had relied on three distinct grounds as a basis for deportation, including the larceny offense underlying the habeas petition. Id., 172. This court reasoned: "*Aquino* is dispositive of the present appeal. There is no evidence in the record before us that the petitioner's guilty plea to larceny in the first degree was the *sole* reason for his deportation. To the contrary, the immigration judge specifically found that removability on the ground of the petitioner's possession of narcotics convictions had been established by clear and convincing evidence." (Emphasis in original; internal quotation marks omitted.) Id., 173. Moreover, this court observed that "[e]ven if the immigration court had predicated its deportation order on the larceny conviction exclusively, the petitioner still could not prevail" because, before the habeas court, the petitioner acknowledged that once he is removed from the United States, he would be permanently barred from reentering the country legally because of his prior narcotics convictions. Id., 174–75. This court rejected the petitioner's invocation of the collateral consequences exception to the mootness doctrine, in the context of which he argued that Congress possibly could change the law, thereby leaving the larceny conviction as the primary impediment to his lawful return. Id., 176–77. This court stated: "We conclude that the possibility that Congress may, at some point in the future, amend federal immigration law so as to permit

the petitioner's reentry into the country despite his nar-
cotics convictions is pure conjecture." Id., 176–77.

We carefully have reviewed the evidence in the record
related to the petitioner's deportation—the September
2, 2009 decision of the United States Immigration Court
denying a motion filed by the petitioner to defer his
deportation to Haiti, and ordering his deportation. It
appears that the court relied solely on the petitioner's
conviction of assault in the second degree, finding that
he was subject to removal based on the clear and con-
vincing evidence that he committed that offense, which
it described as "an aggravated felony crime of vio-
lence."[4] Also, the court found that the petitioner had
not met his burden of proving that it was more likely
than not that he would be subject to torture upon his
return to Haiti.

The facts of the present case are distinguishable from
*Aquino* and *Quiroga* because the record in the present
case suggests that the petitioner's conviction for assault
in the second degree, following his plea, *was* the sole
basis for his deportation. Additionally, the petitioner
argued before the habeas court that his removal from
the United States was based solely on his assault convic-
tion. These circumstances lead us to a consideration
of whether, in accordance with the analysis in *Aquino*
and *Quiroga*, there is any evidence in the record to
suggest that, in the absence of the guilty plea to the
assault charge, the petitioner would be allowed to reen-
ter this country or become a citizen.

The record reflects, and the petitioner does not dis-
pute, that at the time that he was alleged to have com-
mitted the offenses for which he pleaded guilty—assault
in the second degree and possession of a sawed-off
shotgun—he was serving a period of probation resulting
from an earlier conviction for threatening in the second
degree in violation of General Statutes § 53a-62. Neither
the record nor the parties have shed light on the subdivi-
sion of the statute under which the petitioner was con-
victed. As a result of the threatening conviction, the
petitioner was sentenced to a suspended term of impris-
onment of eleven months, with two years of probation.
The record does not divulge facts concerning the threat-
ening conviction. The parties, however, are in
agreement that the petitioner's conviction resulted from
a guilty plea, and that the incident underlying the
offense occurred in 2006, when the petitioner was eigh-
teen years of age.

To demonstrate that the plea to assault in the second
degree that was at issue in the present habeas action
was not the only impediment to the petitioner's lawful
return to the United States, the respondent aptly draws
our attention to provisions in the United States Code
that bar aliens from lawful readmission to the United
States following their conviction of a crime involving
moral turpitude. See 8 U.S.C. § 1182 (a) (2) (A) (i) (I)[5]

(unless statutory exception applies aliens seeking readmission into United States are ineligible for visas or admission if they have been convicted of crimes involving moral turpitude); 8 U.S.C. § 1101 (a) (13) (C) (v) (aliens who have committed crimes of moral turpitude and attempt to reenter United States are deemed aliens seeking readmission). Threatening in the second degree is a class A misdemeanor. General Statutes § 53a-62 (b). As such, it is punishable by a sentence of imprisonment of "a term not to exceed one year . . . ." General Statutes § 53a-36. The respondent and the petitioner are at odds as to whether the petitioner's prior conviction of threatening in the second degree was a conviction of a crime involving moral turpitude. The respondent urges us to conclude that the conviction properly may be so classified. The petitioner argues to the contrary in an attempt to demonstrate that the prior conviction would not impede his future readmission to the United States. In accordance with the mootness analysis in *Aquino*, the narrow inquiry before us is whether there is evidence to suggest that, in the absence of the assault conviction underlying the present habeas petition, the petitioner would be allowed to reenter this country or become a citizen.

The petitioner summarily states that a single conviction of a crime involving moral turpitude is not a bar under the relevant statutory exception codified in 8 U.S.C. § 1182 (a) (2) (A) (ii) (I) and (II).[6] A review of that exception, however, reflects that neither clause (ii) (I) nor (II) apply to the petitioner. Clause (ii) (I) does not apply because the crime at issue was committed when the petitioner was eighteen years of age. See footnote 6 of this opinion. Clause (ii) (II) applies only if the maximum penalty possible for the crime of which the alien was convicted did not exceed imprisonment for one year *and* the alien was not sentenced to a term of imprisonment in excess of six months. See id. Although threatening in the second degree is punishable by a term not to exceed one year; General Statutes § 53a-36; following his conviction, the petitioner was sentenced to a suspended term of imprisonment of eleven months, with two years of probation. Regardless of the amount of that sentence that ultimately was executed, the petitioner was sentenced to a term of imprisonment in excess of six months. Therefore, the exception in clause (ii) (II) does not apply.[7]

There is no Connecticut authority that resolves the question of law as to whether the petitioner's conviction for threatening in the second degree is evidence of a crime of moral turpitude under the Immigration and Nationality Act; see 8 U.S.C § 1101 et seq.[8] We consider the effect of that federal statutory scheme mindful that, "[o]rdinarily, Connecticut state courts seek guidance from decisions of the United States Court of Appeals for the Second Circuit because they carry particularly persuasive weight in the interpretation of federal stat-

utes." *Vazquez* v. *Buhl*, 150 Conn. App. 117, 137, 90 A.3d 331 (2014).

The United States Court of Appeals for the Second Circuit has adopted a categorical analysis in its evaluation of crimes for the purpose of determining whether they involve moral turpitude: "In this Circuit, we have long endorsed categorical analyses of criminal statutes in the context of deportation orders for crimes of moral turpitude. . . . Our decisions in this area stand for the proposition that the offense, judged from an abstracted perspective, must inherently involve moral turpitude; in other words, any conduct falling within the purview of the statute must by its nature entail moral turpitude. . . . More recently, we have reaffirmed this approach . . . [stating] that [a]s a general rule, if a statute encompasses both acts that do and do not involve moral turpitude, the [Board of Immigration Appeals] cannot sustain a deportability finding [predicated on moral turpitude, based] on that statute." (Citations omitted; internal quotation marks omitted.) *Dalton* v. *Ashcroft*, 257 F.3d 200, 204 (2d Cir. 2001).

"The [Board of Immigration Appeals] has defined moral turpitude generally to encompass conduct that shocks the public conscience as being inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general. . . . Whether a crime is one involving moral turpitude depends on the offender's evil intent or corruption of the mind. . . . [C]rimes in which fraud was an ingredient have always been regarded as involving moral turpitude. . . . And generally, where intent is not an element of a crime, that crime is not one involving moral turpitude." (Citations omitted; internal quotation marks omitted.) *Mendez* v. *Mukasey*, 547 F.3d 345, 347 (2d Cir. 2008); see also *Sui* v. *Immigration & Naturalization Service*, 250 F.3d 105, 117 n.11 (2d Cir. 2001). "[A] corrupt scienter is the touchstone of moral turpitude." *Michel* v. *Immigration & Naturalization Service*, 206 F.3d 253, 263 (2d Cir. 2000); see also *Efstathiadis* v. *Holder*, 752 F.3d 591, 597 (2d Cir. 2014).

Additionally, the United States Court of Appeals for the Fifth Circuit has stated: "As a general rule, laws that authorize criminal punishment without proof that the offender *intended or recklessly disregarded the potential consequences of his act* do not define [crimes involving moral turpitude]. . . . Thus, negligence-based crimes usually do not amount to [crimes involving moral turpitude]. . . . Similarly, strict liability crimes generally are not [crimes involving moral turpitude]. . . . [C]rimes deemed not to involve moral turpitude . . . are either very minor crimes that are deliberate or graver crimes committed without a bad intent, most clearly strict-liability crimes." (Citations omitted; emphasis added; internal quotation marks omitted.) *Rodriguez-Castro* v. *Gonzales*, 427 F.3d 316, 323 (5th

Cir. 2005). In certain circumstances, offenses committed with a reckless mental state constitute crimes involving moral turpitude. See, e.g., *Avendano* v. *Holder*, 770 F.3d 731 (8th Cir. 2014) (scienter underlying crime involving moral turpitude may include specific intent, deliberateness, wilfulness, or recklessness); *Idy* v. *Holder*, 674 F.3d 111, 118 (1st Cir. 2012) ("a reckless state of mind can under some circumstances be sufficient to support a finding of moral turpitude").

Also, federal courts have held that offenses that involve intentionally placing another person in fear of physical injury constitute crimes involving moral turpitude. See, e.g., *Latter-Singh* v. *Holder*, 668 F.3d 1156, 1161–63 (9th Cir. 2012) (intent to instill great fear of serious bodily injury or death in another constitutes vicious motive or corrupt mind demonstrative of crime involving moral turpitude); *Chanmouny* v. *Ashcroft*, 376 F.3d 810, 814–15 (8th Cir. 2004) (threatening to commit crime of violence with purpose to terrorize another is type of base and depraved behavior that invokes issues of moral turpitude).[9]

Having set forth some general principles regarding crimes involving moral turpitude, we turn to an examination of § 53a-62 (a), which provides: "A person is guilty of threatening in the second degree when: (1) By physical threat, such person intentionally places or attempts to place another person in fear of imminent serious physical injury, (2) such person threatens to commit any crime of violence with the intent to terrorize another person, or (3) such person threatens to commit such crime of violence in reckless disregard of the risk of causing such terror."

Each subdivision of § 53a-62 (a) requires proof of a particular mental state.[10] Under subdivisions (1) and (2) of § 53a-62 (a), the legislature requires proof of an intentional mental state. Subdivision (1) requires proof that an accused intentionally placed another person in fear of imminent serious physical injury. Subdivision (2) requires proof that an accused intentionally terrorized another person. With regard to subdivision (3) of § 53a-62 (a), the legislature requires proof of a reckless mental state, namely, proof that an accused recklessly disregarded the risk of causing terror in another person. Significant to our analysis, however, is that all three subdivisions of § 53a-62 (a) require proof that an accused made some form of a threat. "A threat is defined as an indication of something impending and usu[ally] undesirable or unpleasant . . . as . . . *an expression of an intention to inflict evil, injury, or damage on another* usu[ally] as retribution or punishment for something done or left undone . . . ." (Emphasis added; internal quotation marks omitted.) *State* v. *Cook*, 287 Conn. 237, 257 n.14, 947 A.2d 307, cert. denied, 555 U.S. 970, 129 S. Ct. 464, 172 L. Ed. 2d 328 (2008). Regardless of whether an offense is characterized by

the immediacy of the threat posed, any threat is, in and of itself, "an expression of an intent to cause some future harm." Id., 257.[11]

"[T]he [petitioner] in a habeas corpus proceeding bears a heavy burden of proof." *Myers* v. *Manson*, 192 Conn. 383, 387, 472 A.2d 759 (1984). On the basis of the record before us, we conclude that there is no evidence to suggest that the guilty plea to assault in the second degree underlying the present habeas petition is the only impediment to the petitioner's reentry into the United States. The petitioner's earlier threatening conviction is evidence to the contrary, for a conviction of threatening in the second degree necessarily involves the type of conduct and mental state that is characteristic of crimes involving moral turpitude.[12] Accordingly, we further conclude that the petitioner's appeal is moot because any relief we could afford him in connection with the assault conviction underlying his petition for a writ of habeas corpus would not have any effect on his ability lawfully to reenter this country or to become a citizen. For this reason, we dismiss the appeal. "The appellate courts have a duty to dismiss, even on [their] own initiative, any appeal that [they lack] jurisdiction to hear." (Internal quotation marks omitted.) *Liberty Mutual Ins. Co.* v. *Lone Star Industries, Inc.*, 290 Conn. 767, 794, 967 A.2d 1 (2009).

The appeal is dismissed.

In this opinion the other judges concurred.

[1] See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[2] As will be discussed later in this opinion, the record suggests that the petitioner was deported solely because of his conviction of assault in the second degree.

[3] Subsequently, the court filed a signed transcript of its decision in accordance with Practice Book § 64-1 (a).

[4] See 8 U.S.C. § 1227 (a) (2) (A) (iii) ("[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable"). We note that, under relevant law, a conviction of possession of a sawed-off shotgun is a lawful basis for deportation, as well. See 8 U.S.C. § 1227 (a) (2) (C) ("[a]ny alien who at any time after admission is convicted under any law of purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying . . . any weapon, part, or accessory which is a firearm or destructive device . . . in violation of any law is deportable").

[5] Section 1182 of title 8 of the United States Code, entitled "Inadmissible aliens," provides in relevant part: "(a) Classes of aliens ineligible for visas or admission—Except as otherwise provided in this chapter, aliens who are inadmissible under the following paragraphs are ineligible to receive visas and ineligible to be admitted to the United States . . .

"(2) Criminal and related grounds

"(A) Conviction of certain crimes

"(i) In general—Except as provided in clause (ii), any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of—

"(I) a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime . . . ." 8 U.S.C. § 1182 (a) (2) (A) (i) (I).

[6] The exception in 8 U.S.C. § 1182 (a) (2) (A) provides: "(ii) Exception— Clause (i) (I) shall not apply to an alien who committed only one crime if—

"(I) the crime was committed when the alien was under 18 years of age, and the crime was committed (and the alien released from any confinement to a prison or correctional institution imposed for the crime) more than 5 years before the date of application for a visa or other documentation and

the date of application for admission to the United States, or

"(II) the maximum penalty possible for the crime of which the alien was convicted (or which the alien admits having committed or of which the acts that the alien admits having committed constituted the essential elements) did not exceed imprisonment for one year and, if the alien was convicted of such crime, the alien was not sentenced to a term of imprisonment in excess of 6 months (regardless of the extent to which the sentence was ultimately executed)."

[7] See *Laryea* v. *United States*, 300 F. Supp. 404, 406–407 (E.D. Va. 2004) (concluding that suspended portion of sentence must count toward exception's six month limit because suspension of portion of sentence merely reflects extent to which sentence ultimately was executed).

[8] "Moral turpitude, [our Supreme Court has] observed, is a vague and imprecise term to which no hard and fast definition can be given. . . . A general definition . . . is that moral turpitude involves an act of inherent baseness, vileness or depravity in the private and social duties which man does to his fellow man or to society in general, contrary to the accepted rule of right and duty between man and law." (Citations omitted.) *Moriarty* v. *Lippe*, 162 Conn. 371, 383, 294 A.2d 326 (1972).

[9] The respondent refers to additional authority in this regard, including *Solomon* v. *Attorney General*, 308 Fed. Appx. 644, 647 (3d Cir. 2009) (concluding that conviction based on intentional transmission of threats is crime involving moral turpitude); *Manzar* v. *Mukasey*, 266 Fed. Appx. 656, 657 (9th Cir. 2008) (concluding that conviction for threatening to kill another person is crime involving moral turpitude); and *Campbell* v. *Attorney General*, 174 Fed. Appx. 89, 91 (3d Cir. 2006) (concluding that conviction based on intentionally placing another in fear of physical injury is crime involving moral turpitude).

[10] "When the commission of an offense defined in this title, or some element of an offense, requires a particular mental state, such mental state is ordinarily designated in the statute defining the offense by use of the terms 'intentionally', 'knowingly', 'recklessly', or 'criminal negligence', or by use of terms, such as 'with intent to defraud' and 'knowing it to be false', describing a specific kind of intent or knowledge. When one and only one of such terms appears in a statute defining an offense, it is presumed to apply to every element of the offense unless an intent to limit its application clearly appears." General Statutes § 53a-5.

[11] At least in one Superior Court case, albeit not in a case involving the Immigration and Nationality Act, the court observed that threatening is a crime involving moral turpitude. See *O'Connor* v. *Meyer*, Superior Court, judicial district of New Haven, Docket No. CV-06-5006438-S (December 5, 2008) (46 Conn. L. Rptr. 818).

[12] We observe that, in applicable circumstances, an alien is subject to deportation following his conviction of one or more crimes involving moral turpitude. See 8 U.S.C. § 1227 (a) (2) (A) (i) and (ii).