# STATE OF CONNECTICUT *v.* MARIO AQUINO
## (SC 17490)

Sullivan, C. J., and Norcott, Katz, Palmer and Vertefeuille, Js.*

Argued April 12—officially released August 8, 2006

*The listing of justices reflects their seniority status on this court as of the date of argument.

*Conrad Ost Seifert*, for the appellant (defendant).

*James M. Ralls*, senior assistant state's attorney, with whom, on the brief, were *Michael Pepper*, senior assistant state's attorney, and *Michael Dearington*, state's attorney, for the appellee (state).

*Jorge L. Baron, Tova Indritz* and *Bruno C. Bier* filed a brief for the American Civil Liberties Union Foundation Immigrants' Rights Project et al. as amici curiae.

*Opinion*

SULLIVAN, C. J. The defendant, Mario Aquino, entered a guilty plea under the *Alford*[1] doctrine to charges of attempt to commit assault in the second degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-60 (a) (1) and failure to appear in the first degree in violation of General Statutes § 53a-172. The defendant then filed a motion to withdraw his guilty plea claiming, inter alia, that his attorney had failed to advise him adequately of the consequences of his plea under federal immigration law. The trial court denied the motion and sentenced the defendant to five years imprisonment, suspended after one year, with three years probation. The defendant appealed from the judgment of conviction to the Appellate Court, claiming that his guilty plea was not made knowingly and voluntarily due to ineffective assistance of counsel. *State* v. *Aquino*, 89 Conn. App. 395, 396–97, 873 A.2d 1075 (2005). Specifically, the defendant argued that his attorney failed to advise him of the certainty of deportation as the result of the plea. Id., 406. The Appellate Court concluded that the failure to advise a client whether deportation will result from a guilty plea does not constitute ineffective assistance of counsel and that, in any event, the

[1] Under *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), "[a]n individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime."

defendant had not suffered any prejudice as a result of the guilty plea. Id., 407–408. Accordingly, the Appellate Court affirmed the judgment of the trial court. Id., 410. We granted the defendant's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly conclude that the defendant's plea of guilty was not rendered unknowingly and involuntarily due to ineffective assistance of counsel?" *State* v. *Aquino*, 275 Conn. 904, 882 A.2d 676 (2005). We conclude that the appeal must be dismissed as moot.

The Appellate Court opinion sets forth the following facts and procedural history. "The defendant is a Guatemalan national who illegally entered the United States in 1986 and remained here as an illegal alien for the next seventeen years. At a plea hearing before the court on February 20, 2003, the state offered the following factual basis for the defendant's plea: 'In the city of New Haven back on April 7, 1989, around 4:50 p.m., police officers were called to 183 Fulton Street. That is the condominium address of the victim . . . Frank Rogers. [The victim] at the time was involved in the construction trade, and approximately six months prior to that date, he had taken in the defendant, who had no home and no work. He had employed the defendant and allowed him to live at his condominium. He was paying the defendant for the work he was doing and, on that date, [the victim] had expressed to the defendant, who was apparently an immigrant from Guatemala, that [he] wished for him to vacate the premises. The defendant didn't take well to that request, approached the victim with what turned out to be a handgun and threatened the victim. He fired one shot at the victim, missing the victim. The victim was able to grab onto the defendant. They struggled over the gun. Another shot was fired into the ceiling of the premises. They fell down some stairs, and, eventually, the defendant made off without the gun. The gun was recov-

ered at the scene. Shortly thereafter, the defendant was apprehended by New Haven police department officials . . . in the vicinity of Interstate 95 and Stiles Avenue, and [he] was positively identified by the victim as the person who tried to shoot him. Subsequently, the defendant was booked at the police department, and the bail commissioner saw fit to give him a promise to appear with a court date in [Superior Court, geographical area number six] of April 25, 1989, as his first court appearance. He signed . . . the promise to appear form with that date. On April 25, 1989, in [geographical area number six] the defendant failed to appear. That failure to appear was wilful, and the court, at that time, ordered a rearrest, and a failure to appear warrant went out. In 2002, the New Haven police department got word from Orange County, New York, that the officials there had [the defendant] in custody, and he was subsequently extradited here to New Haven to answer to the original charges, the felony charges [that] he had been arrested for back in 1989.'

"After these facts were recited at the plea hearing, the court conducted a plea canvass, advising the defendant, who was represented by an attorney, of his constitutional rights, of the factual basis of the state's case against him and of the maximum sentence that might be imposed. With reference to the plea arrangement, the court inquired whether the defendant had been coerced in any fashion, either by threats or promises, to which the defendant answered in the negative. The defendant also acknowledged that he had consulted with his attorney before he had entered his plea and that he was satisfied with the advice that he had received from his attorney.

"In addition, the court inquired: 'Do you understand [that] if you are not a citizen of the United States, conviction of the offenses with which you are charged could result in deportation, exclusion from admission into the

United States or denial of naturalization rights pursuant to the laws of the federal government. Do you understand that?' The defendant answered in the affirmative, declaring, 'Yes sir. I understand clear.' The court thereupon found that the defendant's plea of guilty had been 'voluntarily and understandingly made with the assistance of competent counsel,' and continued the matter for sentencing.

"On April 4, 2003, the defendant filed a motion to withdraw his plea. The motion alleged that, at the time the plea was entered, the defendant 'did not have a clear understanding of the likelihood that by entering into the plea bargain proposed, he would be jeopardizing his continuing ability to reside in the United States and his ability to petition for naturalization.' " *State* v. *Aquino*, supra, 89 Conn. App. 397–99. In response, the court conducted an evidentiary hearing. Id., 399. The defendant testified at the hearing that his attorney told him at the time of the plea canvass that he might be deported as the result of the guilty plea. The trial court denied the defendant's motion to withdraw his plea and the defendant appealed from the judgment to the Appellate Court. After the appeal was filed, the defendant was deported. Thereafter, the Appellate Court affirmed the trial court's judgment and this certified appeal followed.

On appeal to this court, the defendant does not dispute the Appellate Court's conclusion that his trial counsel advised him of the *possible* immigration consequences of his plea. Id., 407. The defendant claims, however, that the Appellate Court improperly determined that his attorney's failure to advise him that deportation would be the automatic and inevitable result of his plea did not constitute ineffective assistance of counsel. Id., 410; see *State* v. *Paredez*, 136 N.M. 533, 538, 101 P.3d 799 (2004) ("when a defendant's guilty

plea almost certainly will result in deportation, an attorney's advice to the client that he or she 'could' or 'might' be deported would be misleading and thus deficient"). The state responds: (1) we should not address the defendant's legal claim because he failed to meet his burden of proving either that, at the time of his guilty plea, deportation as a result of his conviction was a legal certainty or that he actually was deported as a result of his conviction; (2) even if we review the claim, the constitution does not require counsel to provide advice on the immigration consequences of a guilty plea; and (3) even if such advice is constitutionally required, the advice provided by the defendant's attorney was adequate. We conclude that, in the absence of any evidence that the defendant's guilty plea was the sole reason for his deportation, the defendant's appeal must be dismissed as moot.

The defendant did not produce any evidence at the hearing on his motion to withdraw his guilty plea—indeed, he did not even claim—that he would be deported solely as the result of his guilty plea. While this appeal was pending, the defendant was deported.[2] There is no evidence in the record as to the reason for his deportation. If it was not the result of his guilty plea alone, then this court can grant no practical relief and any decision rendered by this court would be purely advisory.[3] "An actual controversy must exist not only

[2] The record reveals that the defendant was deported on February 6, 2004. Our careful review of the record reveals, however, that he has never claimed and that the record contains no evidence, that his guilty plea in the present case was the sole reason for his deportation. At the hearing on the defendant's motion to withdraw his guilty plea, the defendant testified that he was in this country illegally and did not have a green card. His trial counsel testified that the defendant "was totally here without any papers at all." Thus, his illegal immigration status could have been the reason for his deportation.

[3] The Appellate Court concluded that the appeal was not rendered moot by the deportation because the defendant's ability to petition for naturalization would be gravely impaired by the guilty plea. State v. Aquino, supra, 89 Conn. App. 401. Just as there is no evidence in the record before us establishing the reason for the defendant's deportation, however, there is no evidence to

at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *Connecticut Coalition Against Millstone* v. *Rocque*, 267 Conn. 116, 125–26, 836 A.2d 414 (2003); see also *Wallingford* v. *Dept. of Public Health*, 262 Conn. 758, 767, 817 A.2d 644 (2003) ("courts are called upon to determine existing controversies, and thus may not be used as a vehicle to obtain advisory judicial opinions on points of law" [internal quotation marks omitted]). "This court has often stated that the question of subject matter jurisdiction, because it addresses the basic competency of the court, can be raised by any of the parties, or by the court sua sponte, at any time. . . . [T]he court has a duty to dismiss, even on its own initiative, any appeal that it lacks jurisdiction to hear. . . . Moreover, [t]he parties cannot confer subject matter jurisdiction on the court, either by waiver or by consent." (Citations omitted; internal quotation marks omitted.) *Webster Bank* v. *Zak*, 259 Conn. 766, 774, 792 A.2d 66 (2002). We conclude, therefore, that the appeal must be dismissed on the ground that the defendant has failed to establish that his claim is not moot.

The form of the judgment is improper; the judgment is reversed and the case is remanded to the Appellate Court with direction to dismiss the appeal for lack of subject matter jurisdiction.

In this opinion the other justices concurred.

suggest that, in the absence of the guilty plea, the defendant would be allowed to reenter this country or become a citizen.