******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

NESTOR QUIROGA *v.* COMMISSIONER
OF CORRECTION
(AC 34415)

DiPentima, C. J., and Gruendel and Beach, Js.

*Argued January 9—officially released April 1, 2014*

(Appeal from Superior Court, judicial district of
Tolland, Cobb, J.)

*Natalie Olmstead*, assigned counsel, for the appellant (petitioner).

*Laurie N. Feldman*, special deputy assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Richard K. Greenalch, Jr.*, special deputy assistant state's attorney, for the appellee (respondent).

*Opinion*

GRUENDEL, J. The petitioner, Nestor Quiroga, appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. That petition was predicated on the alleged ineffective assistance of his trial counsel regarding the immigration consequences of a guilty plea. Following an expedited trial, the habeas court concluded that the petitioner had not established any deficient performance on the part of his trial counsel. The petitioner now challenges the propriety of that determination. We conclude that the present appeal is moot and, accordingly, dismiss the appeal.

The petitioner is a citizen of Uruguay who was admitted as a lawful permanent resident of the United States in 1989. On March 11, 2008, the petitioner appeared before the trial court to enter into a plea agreement concerning two separate criminal matters. At that time, he was represented by Attorney Amelia Ruggeri, a public defender. The petitioner first pleaded guilty, in docket number CR-07-0161034, to one count of possession of narcotics in violation of General Statutes § 21a-279 (a). The petitioner then entered a plea of nolo contendere, in docket number CR-07-0161093, to one count of larceny in the first degree in violation of General Statutes § 53a-122. During its canvass of the petitioner, the court inquired, inter alia, as to whether the petitioner understood "that if you are not a [United States] citizen, your pleas may result in your deportation, exclusion from admission to the United States, or denial of naturalization," and whether he was satisfied with Ruggeri's assistance. The petitioner responded in the affirmative to both queries. The court then found the pleas to be knowingly and voluntarily made with the assistance of competent counsel, and it sentenced the petitioner to concurrent terms of two years incarceration, execution suspended, with three years of probation.

Less than two years later, the petitioner was arrested for, and he thereafter admitted to, violating the terms of his probation due to his November 2, 2010 arrest for possession of narcotics in violation of § 21a-279 (a). As a result of that violation of probation, the trial court sentenced him to one year of imprisonment. While incarcerated, the petitioner received a notice to appear at a removal proceeding from the United States Department of Homeland Security. That March 1, 2011 notice set forth three distinct grounds for removal. First, it charged the petitioner with violating "[s]ection 237 (a) (2) (B) (i) of the Immigration and Nationality Act, as amended, in that, at any time after admission, you have been convicted of a violation of . . . any law or regulation of a State . . . relating to a controlled substance . . . ." Second, the notice charged the petitioner with violating "[s]ection 237 (a) (2) (A) (iii) of the Immigra-

tion and Nationality Act . . . as amended, in that, at any time after admission, you have been convicted of an aggravated felony . . . relating to a theft offense . . . or burglary offense for which the term of imprisonment at least 1 year was imposed." Third, the notice charged the petitioner with violating "[s]ection 237 (a) (2) (A) (ii) of the Immigration and Nationality Act, as amended, in that, at any time after admission, you have been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal conduct."

Approximately one month later, the petitioner on April 4, 2011, filed a pro se petition for a writ of habeas corpus; an amended petition was filed by the petitioner's habeas counsel, Damon A. R. Kirschbaum on January 3, 2012. The amended petition alleged that Ruggeri's representation on the larceny plea[1] was ineffective in that she failed to (1) "adequately research the legal issue of the petitioner's immigration status and the risk of deportation/removal"; (2) "accurately advise the petitioner about the risk of deportation/removal"; and (3) "make the petitioner's immigration status and the risk of deportation/removal part of the plea bargaining process." The matter was heard on an expedited basis on February 15, 2012, because the petitioner at that time was "in the custody of federal immigration authorities and subject to deportation any day."[2] Following a trial, the court found "that the petitioner has failed to establish his burden to prove that the petitioner's trial counsel's conduct was deficient and therefore, denies the petition."[3] The petitioner then filed a motion to reargue on February 21, 2012. The court granted the motion but denied the relief requested. On February 29, 2012, the court granted certification to appeal from the judgment denying the habeas corpus petition.

It is undisputed that, during the pendency of the petitioner's habeas proceeding before the habeas court, the United States Immigration Court issued an oral decision in which it found all three grounds for removal proven.[4] In particular, the immigration judge first found that "the aggravated felony larceny ground has been established by clear and convincing evidence." The immigration judge then found that the petitioner "has also been convicted twice of either possession of narcotics or attempt to commit the possession of narcotics. Under the *Gousse* [v. *Ashcroft*, 339 F.3d 91 (2d Cir. 2003)] decision of the [United States Court of Appeals for the] Second Circuit, the court finds that removability has been established by clear and convincing evidence." Accordingly, the immigration judge ordered that the petitioner "be removed to Uruguay." The petitioner filed an appeal from that decision, which the Board of Immigration Appeals dismissed on November 29, 2011.

The petitioner commenced this appeal from the judgment of the habeas court on March 14, 2012. It is undisputed that the petitioner thereafter was permanently

removed to Uruguay in April, 2012. In light of that development, the respondent, the Commissioner of Correction, argues, as a threshold matter, that the appeal is moot pursuant to *State* v. *Aquino*, 279 Conn. 293, 901 A.2d 1194 (2006). We agree.

Like the present case, *Aquino* involved a litigant who was deported during the pendency of an appeal before this court. Id., 297. Our Supreme Court held that "in the absence of any evidence that the defendant's guilty plea was the sole reason for his deportation, the defendant's appeal must be dismissed as moot. The defendant did not produce any evidence at the hearing on his motion to withdraw his guilty plea—indeed, he did not even claim—that he would be deported solely as the result of his guilty plea. While this appeal was pending, the defendant was deported. There is no evidence in the record as to the reason for his deportation. If it was not the result of his guilty plea alone, then this court can grant no practical relief and any decision rendered by this court would be purely advisory. . . . We conclude, therefore, that the appeal must be dismissed on the ground that the defendant has failed to establish that his claim is not moot." (Citations omitted; footnotes omitted.) Id., 298–99.

*Aquino* is dispositive of the present appeal. There is no evidence in the record before us that the petitioner's guilty plea to larceny in the first degree was the *sole* reason for his deportation. To the contrary, the immigration judge specifically found that removability on the ground of the petitioner's possession of narcotics convictions had "been established by clear and convincing evidence."

The petitioner nevertheless maintains that the larceny conviction "was the primary reason for the deportation" and that, absent that conviction, he would have been eligible for a possible cancellation of removal pursuant to 8 U.S.C. § 1229b.[5] Attorney Anthony Collins, who represented the petitioner during his violation of probation proceeding, offered his opinion during testimony at the habeas trial that, absent the larceny conviction, the petitioner had a very good chance of obtaining such discretionary relief. It nevertheless remains that *Aquino* requires proof that the larceny plea was the exclusive basis of the petitioner's deportation, rather than a primary or likely one.

Even if the immigration court had predicated its deportation order on the larceny conviction exclusively, the petitioner still could not prevail. It is axiomatic that "the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pen-

dency of the appeal." (Internal quotation marks omitted.) *Burbank* v. *Board of Education*, 299 Conn. 833, 839, 11 A.3d 658 (2011); see also *State* v. *Milner*, 309 Conn. 744, 751, 72 A.3d 1068 (2013) ("courts are called upon to determine existing controversies, and thus may not be used as a vehicle to obtain advisory judicial opinions on points of law" [internal quotation marks omitted]).

In seeking expedited review from the habeas court, the petitioner argued that "he could be deported any day and once deported he will no longer be able to seek relief." During the habeas trial, the petitioner corroborated that allegation with the testimony of Collins. Collins informed the court that once deported, the petitioner could not return to the United States under current law:

"[Collins]: . . . If I just might say, I mean, if [the petitioner] goes back to Uruguay, he will never be able to come back to the United States.

"[The Petitioner's Counsel]: What if he gets deported tomorrow and habeas relief happens in three weeks?

"[Collins]: I don't think he'd be able to come back.

"[The Petitioner's Counsel]: What's significant about the fact that he gets removed?

"[Collins]: Because it's a final order of removal and he is—once he leaves the United States, he is permanently inadmissible because of the narcotics convictions.

"The Court: Say that again?

"[Collins]: Once he is removed from the United States, under current law he is permanently inadmissible to the United States because of the narcotics convictions." In its memorandum of decision, the habeas court specifically found that "[o]nce deported, and due to the nature of his offense, [the petitioner] will not be allowed to return to this country under federal law."

On appeal, the petitioner does not dispute the fact that he is barred from reentering the United States, which normally would render his appeal moot. See *United States* v. *Rosenbaum-Alanis*, 483 F.3d 381, 383 (5th Cir. 2007) ("[b]ecause the defendant has been deported . . . and is legally unable, without permission of the Attorney General, to reenter the United States to be present for a resentencing proceeding . . . there is no relief we are able to grant him and his appeal is moot"), cert. denied, 552 U.S. 1179, 128 S. Ct. 1216, 170 L. Ed. 2d 58 (2008). Instead, he argues that the collateral consequences exception to the mootness doctrine applies. See, e.g., *State* v. *McElveen*, 261 Conn. 198, 205, 802 A.2d 74 (2002) ("a controversy continues to exist, affording the court jurisdiction, if the actual injury suffered by the litigant potentially gives rise to a collateral injury from which the court can grant relief"). Specifically, the petitioner argues that "[w]ithout the

sole aggravated felony on [his] record, he may at some point be able to apply to come back to the United States" because "[f]ederal immigration laws are constantly changing; therefore, the current effect of a conviction not related to this case and not the primary cause of deportation should not be considered when determining whether this court has subject matter jurisdiction."

As our Supreme Court has explained, "for a litigant to invoke successfully the collateral consequences doctrine, the litigant must show that there is a reasonable possibility that prejudicial collateral consequences will occur. Accordingly, the litigant must establish these consequences by more than mere conjecture, but need not demonstrate that these consequences are more probable than not. This standard provides the necessary limitations on justiciability underlying the mootness doctrine itself. . . . The reviewing court therefore determines, based upon the particular situation, whether, the prejudicial collateral consequences are reasonably possible." *State* v. *McElveen*, supra, 261 Conn. 208. "[T]his standard requires the [litigant] to demonstrate more than an abstract, purely speculative injury, but does not require the [litigant] to prove that it is more probable than not that the prejudicial consequences will occur." *Williams* v. *Ragaglia*, 261 Conn. 219, 227, 802 A.2d 778 (2002). We conclude that the possibility that Congress may, at some point in the future, amend federal immigration law so as to permit the petitioner's reentry into the country despite his narcotics convictions is pure conjecture. As such, the petitioner has failed to establish the existence of a collateral injury from which we can grant relief.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] The amended petition contains no mention of, or challenge to, the petitioner's conviction of possession of narcotics. Rather, it pertains exclusively to "the judgment [of conviction] in *State* v. *Nestor Quiroga*, CR-07-0161093" for larceny in the first degree.

[2] As the habeas court noted in its memorandum of decision, "[b]ecause the petitioner was subject to deportation at any time, the court expedited its decision in this case."

[3] Notice of the court's fourteen page memorandum of decision issued on February 17, 2012.

[4] A copy of the immigration court decision was admitted into evidence at the habeas trial as the petitioner's exhibit 16.

[5] As the United States Supreme Court has noted, 8 U.S.C. § 1229b authorizes "a discretionary cancellation of removal," under which "the Attorney General may cancel an order of removal or an order of inadmissibility so long as, inter alia, the noncitizen has not been convicted of a[n] aggravated felony." (Internal quotation marks omitted.) *Carachuri-Rosendo* v. *Holder*, 560 U.S. 563, 571, 130 S. Ct. 2577, 177 L. Ed. 2d 68 (2010).