******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ELEONES BUENO *v.* COMMISSIONER
OF CORRECTION
(AC38662)

Prescott, Mullins and Beach, Js.

*Argued March 21—officially released June 13, 2017*

(Appeal from Superior Court, judicial district of
Tolland, Sferrazza, J.)

*Vishal K. Garg*, for the appellant (petitioner).

*Nancy L. Walker*, deputy assistant state's attorney,
with whom, on the brief, were *Stephen J. Sedensky III*,
state's attorney, and *Randall Blowers*, former special
deputy assistant state's attorney, for the appellee
(respondent).

*Opinion*

BEACH, J. The petitioner, Eleones Bueno, appeals following the denial of his petition for certification to appeal from the judgment denying his petition for a writ of habeas corpus. The dispositive issue is whether the habeas court abused its discretion in so doing. We conclude that it did not and, accordingly, dismiss the appeal.

The petitioner is a citizen of the Dominican Republic who was admitted as a lawful permanent resident of the United States in 1992. On April 11, 2012, the petitioner appeared before the trial court to enter into a plea agreement concerning two separate criminal matters. At that time, he was represented by Attorney Robert Koetsch. The petitioner first pleaded guilty, in docket number CR-11-0141887-S, to one count of larceny in the fifth degree in violation of General Statutes § 53a-125a. The petitioner then pleaded guilty, in docket number CR-11-0141917-S, to one count of larceny in the second degree in violation of General Statutes § 53a–123 (a) (3). In its canvass of the petitioner, the court inquired as to whether the petitioner had "had enough time to talk with" Koetsch and whether he was "satisfied with his legal advice"; the petitioner responded affirmatively. The court further advised the petitioner as follows: "If you're not a citizen of the United States, do you understand the conviction for these offenses might have a consequence of deportation, exclusion from admission or denial of naturalization, pursuant to federal immigration law?" The petitioner answered, "Yes, sir." The court then found the pleas to be knowingly, intelligently and voluntarily made with the assistance of competent counsel. In accordance with the terms of the plea agreement, the court sentenced the petitioner to a total effective sentence of eighteen months incarceration and three years of probation.

Eleven months later, the petitioner again appeared before the trial court.[1] At that time, he pleaded guilty, in docket number CR-13-0415495-S, to one count of escape in the first degree in violation of General Statutes § 53a-169, stemming from his failure to return to a "transitional supervision community release" facility. In canvassing the petitioner, the court informed the petitioner that, as a result of his plea, he "could be deported, excluded from the [United States], or denied naturalization." In response, the petitioner stated, "I understand." The court sentenced the petitioner to a term of one year incarceration, execution suspended after six months, with one day of conditional discharge.

While the petitioner was incarcerated, the United States Department of Homeland Security commenced a removal proceeding against him. Its notice to appear articulated two distinct grounds for removal. First, it charged the petitioner with violating "[§] 237 (a) (2)

(A) (iii) of the Immigration and Nationality Act . . . as amended, in that, at any time after admission, you have been convicted of an aggravated felony . . . relating to a theft offense . . . or burglary offense for which the term of imprisonment [of] at least [one] year was imposed." Second, the notice charged the petitioner with violating "[§] 237 (a) (2) (A) (ii) of the Immigration and Nationality Act, as amended, in that, at any time after admission, you have been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct." Following a hearing, the United States Immigration Court on February 20, 2014, issued an oral decision in which it found both grounds proven and ordered the petitioner to be removed to the Dominican Republic. The petitioner filed an appeal from that decision, which the Board of Immigration Appeals dismissed on June 9, 2014. In its written decision, the Board of Immigration Appeals expressly indicated that the removal order was predicated solely on the petitioner's convictions for larceny in the second degree and larceny in the fifth degree in violation of Connecticut law.[2] The petitioner was removed to the Dominican Republic in August, 2014.

Approximately three months after the immigration court issued its removal order, the petitioner filed an application for a writ of habeas corpus in the Superior Court. The operative pleading, the petitioner's April 30, 2015 amended petition, contains two intertwined claims regarding the immigration consequences of his guilty plea in docket number CR–11–0141917-S, to one count of larceny in the second degree.[3] Specifically, the petitioner alleged that (1) his guilty plea "was not made knowingly, intelligently, and voluntarily because [he] did not know or understand [its] immigration consequences" in violation of his right to due process, and (2) Koetsch rendered ineffective assistance of counsel by failing to properly research and advise him of those consequences.[4]

The respondent, the Commissioner of Correction, thereafter moved to dismiss the petition on mootness grounds, alleging that, in light of the petitioner's other unchallenged convictions that would prevent the petitioner's reentry into the United States, the habeas court could provide him no practical relief. Prior to the commencement of trial on September 18, 2015, the court discussed that motion with the parties. At that time, the court deferred consideration of the matter due to the representation of the petitioner's habeas counsel that a witness who was "necessary for the motion to dismiss" had not yet arrived. A two day trial followed, at which the court heard testimony from four individuals—the petitioner, Koetsch, Warren Murray, a prosecutor for the state, and Justin Conlon, an immigration attorney.

The petitioner testified via videoconference with the

aid of an interpreter. In his testimony, the petitioner stated that Koetsch "never spoke about immigration consequences" of his pleas with him. The petitioner testified that, at the time that he entered his pleas, he did not know that deportation would result from his guilty pleas. He further testified that, if he had been so advised, he "would have never [pleaded] guilty to the crimes."

Koetsch offered contrasting testimony. He stated unequivocally that he apprised the petitioner that "[h]e will be deported" as a result of his guilty pleas. In a colloquy with the petitioner's habeas counsel, Koetsch elaborated on his conversation with the petitioner regarding the immigration consequences of a guilty plea:

"[The Petitioner's Counsel]: . . . I see you told him he will be deported?

"[Koetsch]: Yes. Then we did have a conversation regarding that and . . . he told me that he had a conversation with his father, after I had met with him at the correctional facility, and [the petitioner] told me he didn't care if he got deported and that he would just come back in the country anyway.

"[The Petitioner's Counsel]: Did you give him any advice as to whether he would be able to come back in the country?

"[Koetsch]: I told him once he's deported he's not going to be able to come back in. I don't know how he intended to come back in. I don't get involved in how they come back in the country."

Conlon testified on the petitioner's behalf as to the immigration consequences of the petitioner's larceny pleas, as well as his March 14, 2013 plea of guilty to escape in the first degree. Conlon opined that the latter conviction did not constitute an aggravated felony or a crime involving moral turpitude under federal immigration law. Conlon also acknowledged that the immigration court had found that the petitioner's convictions of larceny in the second degree and larceny in the fifth degree constituted crimes involving moral turpitude.

In addition, Conlon provided testimony regarding the petitioner's guilty plea to a crime involving the assault of a public safety officer a decade earlier in Florida (Florida plea).[5] Conlon noted that the United States Court of Appeals for the Second Circuit has held that, under Connecticut law, a conviction of assaulting a public safety officer for which a defendant was sentenced to at least one year imprisonment constituted an aggravated felony under federal immigration law. See *Canada* v. *Gonzales*, 448 F.3d 560, 564–73 (2d Cir. 2006). Although he was not familiar with such an offense under Florida law, Conlon opined that a felony conviction of assaulting a public safety officer likely would have adverse immigration consequences for a

defendant, provided that it was accompanied by "a one year sentence or more . . . ."

Days after the habeas trial concluded, the court issued its memorandum of decision. In that decision, the court first granted the respondent's motion to dismiss, finding that the matter was moot in light of the Florida plea. In so doing, the court acknowledged that "[n]o transcript [or] court record of the Florida proceeding was introduced before this court. Neither party requested that the court take judicial notice of the laws of Florida concerning deferred adjudications nor supplied reference to specific statutes governing that procedure. However, the petitioner testified at the habeas hearing, and, on cross-examination, he recalled that he entered a guilty plea in the Florida case. Also, his criminal history in 2013 disclosed a 2002 Florida felony record for the offense in question."[6] Accordingly, the court found that, "[a]lthough the evidentiary record is scant, the petitioner's admission to pleading guilty in Florida, in conjunction with his recorded criminal history corroborating the same, persuade this court that, for purposes of immigration law, the petitioner would be regarded as having been convicted of an aggravated felony. This conviction forms an absolute bar to his reentry into the United States."

The court continued: "Usually, this conclusion would terminate the court's adjudicative process. However, it is possible that an appellate tribunal would disagree with this court's determination of a lack of subject matter jurisdiction, either because of an insufficiency of evidence regarding the Florida disposition or because a legal conclusion that bar to reentry does not moot this habeas case. Therefore, the court will, as an alternative, also address the merits of the petitioner's claims." The court noted that "[b]oth the petitioner's due process violation and ineffective assistance claims hinge on proof that the petitioner was unaware that his guilty plea to larceny second degree would automatically compel his deportation by the federal authorities when he decided to plead guilty to that charge . . . ." The court then expressly credited Koetsch's testimony that he advised the petitioner that he definitely would be deported as a result of his guilty plea to the charge of larceny in the second degree. The court discredited the petitioner's testimony to the contrary, finding that "the petitioner was prudently and adequately advised that deportation was certain to follow his conviction." The court further found that "the [petitioner] decided to accept the plea offer because the agreement significantly reduced his possible prison sentence, he was likely to be convicted of deportable offenses in any event, and because of his misplaced reliance on his father's advice as to the ease with which he could return to the United States legally or otherwise." For those reasons, the court concluded, "the amended petition is dismissed, or, alternatively, denied." The petitioner

subsequently filed a petition for certification to appeal to this court, which the habeas court denied, and this appeal followed.

"When the habeas court denies certification to appeal, a petitioner faces a formidable challenge, as we will not consider the merits of a habeas appeal unless the petitioner establishes that the denial of certification to appeal amounts to an abuse of discretion." *Jefferson* v. *Commissioner of Correction*, 144 Conn. App. 767, 772, 73 A.3d 840, cert. denied, 310 Conn. 929, 78 A.3d 856 (2013). To prevail, the petitioner must demonstrate "that the *issues* are debatable among jurists of reason; that a court could resolve the *issues* [in a different manner]; or that the *questions* are adequate to deserve encouragement to proceed further." (Emphasis altered; internal quotation marks omitted.) *Simms* v. *Warden*, 230 Conn. 608, 616, 646 A.2d 126 (1994).

At the outset, we note that two distinct issues are presented in this appeal. The first concerns the question of mootness; the second involves the merits of the petitioner's due process and ineffective assistance of counsel claims. To demonstrate that the court abused its discretion in denying certification to appeal, the petitioner must establish that both issues satisfy the standard enunciated in *Simms* v. *Warden*, supra, 230 Conn. 616.

I

We first consider the mootness question, which implicates the subject matter jurisdiction of the court. See *Council* v. *Commissioner of Correction*, 286 Conn. 477, 486–87, 944 A.2d 340 (2008). "It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . When . . . events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *Rivera* v. *Commissioner of Correction*, 254 Conn. 214, 225–26, 756 A.2d 1264 (2000). Our review of the question of mootness is plenary. *Council* v. *Commissioner of Correction*, supra, 487.

The present case involves a petitioner who has been removed from this country by federal decree following proceedings before the immigration court. In recent years, our courts have considered the mootness question in this context. The seminal decision is *State* v. *Aquino*, 279 Conn. 293, 901 A.2d 1194 (2006), in which a defendant, who had been residing illegally in the United States, appealed from the trial court's denial of his motion to withdraw a guilty plea. Id., 294. In that motion, the defendant claimed that his plea "was not knowingly

and voluntarily" made because counsel never advised him of the "certainty of deportation as the result of the plea." Id. The trial court denied that motion and, while an appeal was pending, the defendant was deported. Id., 297. Our Supreme Court thereafter determined that the defendant's appeal was moot, stating: "The defendant did not produce any evidence at the hearing on his motion to withdraw his guilty plea—indeed, he did not even claim—that he would be deported solely as the result of his guilty plea. . . . There is no evidence in the record as to the reason for his deportation. If it was not the result of his guilty plea alone, then this court can grant no practical relief . . . ." Id., 298. Our appellate courts have adhered to that precedent on numerous occasions. See, e.g., *Quiroga* v. *Commissioner of Correction*, 149 Conn. App. 168, 174, 87 A.3d 1171 (observing that "*Aquino* requires proof that the larceny plea was the exclusive basis of the petitioner's deportation, rather than a primary or likely one"), cert. denied, 311 Conn. 950, 91 A.3d 462 (2014); *State* v. *Chavarro*, 130 Conn. App. 12, 17–18, 21 A.3d 541 (2011) (appeal moot because defendant failed to establish that his deportation was result of guilty plea alone).

The record reflects, and the respondent does not dispute, that the petitioner's removal was based solely on his guilty plea to larceny in the second degree, as the immigration court found that conviction to be both an aggravated felony under federal immigration law and one of two crimes involving moral turpitude. See footnote 2 of this opinion. Accordingly, the "narrow inquiry before us is whether there is evidence to suggest that, in the absence of the [larcency in the second degree] conviction underlying the present habeas petition, the petitioner would be allowed to reenter this country or become a citizen." *St. Juste* v. *Commissioner of Correction*, 155 Conn. App. 164, 175, 109 A.3d 523, cert. granted, 316 Conn. 901, 111 A.3d 470 (2015); see also *State* v. *Aquino*, supra, 279 Conn. 298–99 n.3 (noting that "there is no evidence to suggest that, in the absence of the guilty plea, the defendant would be allowed to reenter this country or become a citizen").

In the present case, the court's mootness determination was predicated on its conclusion that the Florida plea constituted an aggravated felony under federal immigration law that was "an absolute bar to [the petitioner's] reentry into the United States." Both at trial and on appeal, the petitioner has challenged that determination.[7] For two reasons, we conclude that the court's determination is untenable. First, the record does not disclose the precise crime to which the petitioner pleaded guilty under Florida law. As the Second Circuit has noted with respect to aggravated felonies under federal immigration law, "[t]o determine whether an offense is a crime of violence . . . we must look to the elements and the nature of the offense of conviction, rather than to the particular facts relating to [the] peti-

tioner's crime." (Internal quotation marks omitted.) *Canada* v. *Gonzales*, supra, 448 F.3d 565. The paucity of evidence regarding the Florida plea precluded such review in the present case, as the record before the habeas court did not disclose the specific offense to which the petitioner pleaded guilty under Florida law.

Second, although the petitioner acknowledges that a plea to a crime involving the assault of a public safety officer may give rise to adverse immigration consequences, he maintains that it does so only in instances in which a defendant receives a sentence of at least one year.[8] The Immigration and Nationality Act enumerates dozens of aggravated felonies. See 8 U.S.C. § 1101 (a) (43) (2012). Among those is "a crime of violence . . . for which the term of imprisonment [is] at least one year . . . ." 8 U.S.C. § 1101 (a) (43) (F) (2012). In *Canada* v. *Gonzales*, supra, 448 F.3d 573, the Second Circuit held that a "conviction for assaulting a peace officer, in violation of [General Statutes] § 53a-167c (a) (1), constitutes a 'crime of violence' . . . thus permitting removal of [the] [p]etitioner as an aggravated felon . . . ." In that case, the petitioner was "sentenced to a total of four years' imprisonment . . . ." Id., 563.

In his appellate brief, the respondent avers "that the offense of battery of a public safety officer meets the definition of a crime of violence."[9] It nonetheless remains that the habeas court was presented with no evidence that the petitioner received a "term of imprisonment [of] at least one year" in connection with the Florida plea, as federal law requires. See, e.g., *United States* v. *Martinez-Gonzalez*, 286 Fed. Appx. 672, 673 (11th Cir. 2008) (noting that although defendant's "prior conviction for battery on a law enforcement officer constituted a 'crime of violence' under [federal law] . . . it did not meet the requirements of an 'aggravated felony' because he was sentenced to less than one year of imprisonment"). The only evidence regarding the terms of the Florida plea came during the petitioner's testimony, in which he acknowledged that he performed community service after pleading guilty to the unspecified criminal offense, but "was never imprisoned." The record, therefore, lacks evidence on which the court could conclude that the petitioner's plea to the unspecified Florida offense constituted an aggravated felony under federal immigration law that permanently barred his reentry into the United States. See *Placide* v. *Commissioner of Correction*, 167 Conn. App. 497, 501 n.1, 143 A.3d 1174 (considering additional conviction that did not serve as basis of petitioner's deportation and concluding that "we are not convinced that the petitioner's other conviction . . . would bar reentry as a crime of moral turpitude"), cert. denied, 323 Conn. 922, 150 A.3d 1150 (2016). Accordingly, the court improperly determined that the petition was moot as a result of the Florida plea.

## II

That determination does not end our inquiry, as the petitioner also must demonstrate that the merits of his due process and ineffective assistance of counsel claims are debatable among jurists of reason, could be resolved in a different manner, or are adequate to deserve encouragement to proceed further. *Simms* v. *Warden*, supra, 230 Conn. 616. In resolving those claims, the court expressly credited the testimony of Koetsch and discredited the petitioner's testimony as to whether the petitioner was advised that deportation would result from his guilty plea. As our Supreme Court recently observed, an appellate court "does not . . . evaluate the credibility of the witnesses. . . . Rather, [it] must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Taylor* v. *Commissioner of Correction*, 324 Conn. 631, 643–44, 153 A.3d 1264 (2017); see also *Eastwood* v. *Commissioner of Correction*, 114 Conn. App. 471, 484, 969 A.2d 860 (appellate court does not second-guess findings of habeas court related to credibility of witnesses), cert. denied, 292 Conn. 918, 973 A.2d 1275 (2009). This court, therefore, cannot disturb those determinations.

In light of its assessment of the relative credibility of the testimony offered at trial by the petitioner and Koetsch, as well as the admonition on immigration consequences provided to the petitioner by the trial judge during the plea canvass, the habeas court found that "the petitioner was prudently and adequately advised that deportation was certain to follow his conviction" and that "the petitioner decided to accept the plea offer because the agreement significantly reduced his possible prison sentence, he was likely to be convicted of deportable offenses in any event, and because of his misplaced reliance on his father's advice as to the ease with which he could return to the United States legally or otherwise." Those findings are substantiated by the evidentiary record before us. We therefore conclude that the petitioner cannot demonstrate that his due process and ineffective assistance of counsel claims are debatable among jurists of reason, could be resolved in a different manner, or are adequate to deserve encouragement to proceed further. *Simms* v. *Warden*, supra, 230 Conn. 616. Accordingly, the court did not abuse its discretion in denying the petition for certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] The petitioner was represented by Attorney Matthew Ramia at that proceeding.

[2] Both the decision of the United States Immigration Court and the subsequent decision of the Board of Immigration Appeals reflect that the basis of the removal order was the immigration court's findings that (1) the petitioner's conviction for larceny in the second degree constituted an aggravated felony under federal immigration law, and (2) his convictions for larceny in the second degree and larceny in the fifth degree both constituted "crimes involving moral turpitude" thereunder.

[3] As the petitioner reiterated in his appellate brief, he "is only challenging" his conviction for larceny in the second degree in this habeas action.

[4] The petition also alleged that Koetsch rendered ineffective assistance by failing to "make [his] immigration status . . . part of the plea bargaining process . . . ." At trial, Koetsch testified that, in negotiating the petitioner's pleas, he asked the state to consider a "lesser larceny" charge that would minimize the immigration consequences of a guilty plea. His attempt was unsuccessful. Prosecutor Warren Murray, who handled the petitioner's larceny pleas on behalf of the state, corroborated that testimony by providing a detailed explanation as to why the state would not entertain such a request. Even if the petitioner had offered to serve a greater total effective sentence, Murray testified that he "would have wanted a robbery. It was a crime of violence . . . where a citizen was struck and I would probably want some type of conviction . . . I think society should know that he was engaged in some type of behavior which was rather serious."

In that respect, we note that the long form information in CR-11-0141917-S was admitted into evidence at the habeas trial. Count one alleged that the petitioner committed robbery in the third degree in violation of General Statutes § 53a-136 (a) and stated in relevant part that "at the City of Danbury . . . at approximately 8:15pm, on or about the 22nd day of July 2011, [the petitioner] did commit a robbery where in the course of committing a larceny, he used or threatened the immediate use of physical force upon another person for the purpose of overcoming resistance to the taking of the property, to wit: he and/or another demanded money from [the victim] and when refused he did strike [the victim] and took his wallet and cellular phone . . . ." Count two of the information alleged that the petitioner committed larceny in the second degree, while the third and final count alleged assault in the third degree in violation of General Statutes § 53a-61 (a) (1). That count alleged in relevant part that the petitioner "with the intent to cause physical injury to another person [caused] such injury to another person, to wit: he did strike [the victim] in the head causing pain and/or swelling . . . ." At the plea hearing, the trial court remarked to the petitioner: "Sir, I understand you're disappointed that you're not receiving a completely suspended sentence, but I want to tell you your attorney fought very hard for you and, in fact, the state is giving you consideration in the sense that the plea agreement, as I understand it, does not require a plea to the robbery charge, which would require you to serve 85 percent." In this appeal, the petitioner has not raised any claim regarding Koetsch's alleged failure to make his immigration status part of the plea bargaining process.

[5] In his testimony at the habeas trial, the petitioner acknowledged that, in 1999, he was arrested in Florida and charged with an unspecified offense pertaining to the assault of a public safety officer. The petitioner further testified that he "pled guilty" to that charge, for which he was ordered to perform community service and "was never imprisoned."

[6] The transcript of the petitioner's March 14, 2013 plea hearing on the charge of escape in the first degree was admitted into evidence at the habeas trial. At the outset of that proceeding, a bail commissioner reviewed the petitioner's criminal history, stating in relevant part: "His most recent [conviction] was . . . April of 2012, for larceny second from a person. . . . Also April of 2012 . . . a larceny five . . . . He has a Florida record dated back to 2002, which was a felony." The record before us contains no further documentation of that unspecified offense.

[7] As the petitioner's counsel argued at the habeas trial, "there's no reason for this court to find that [the Florida plea] would be an aggravated felony that would prevent the petitioner's reentry or that [it] was an alternative basis for deportation."

[8] The respondent contends that this distinct claim was not presented to the habeas court and, thus, is unpreserved. In response, the petitioner, citing *Michael T.* v. *Commissioner of Correction*, 319 Conn. 623, 635 n.7, 126 A.3d 558 (2015), argues that his claim is "subsumed within or intertwined with arguments related to the legal claim raised at trial."

We note that the respondent made no reference whatsoever to the Florida

plea in either his August 21, 2015 motion to dismiss or his accompanying memorandum of law in support thereof. Rather, those pleadings focused entirely on the petitioner's larceny and escape pleas in Connecticut. The respondent first mentioned the Florida plea during his cross-examination of Conlon, the final witness at the September 18, 2015 proceeding. At that time, the respondent informed the court that he had "a reasonable basis to believe that the petitioner has been convicted of battery against a police officer, a public safety officer in the state of Florida in 2002 or 2003."

[9] Apart from being a crime of violence pursuant to 8 U.S.C. § 1101 (a) (43) (F), the respondent has not identified any other basis on which the Florida plea could constitute an aggravated felony under federal law.

––––––––––––––––––––––––––––