******************************************************

The "officially released" date that appears near the be-
ginning of each opinion is the date the opinion will be pub-
lished in the Connecticut Law Journal or the date it was
released as a slip opinion. The operative date for the be-
ginning of all time periods for filing postopinion motions
and petitions for certification is the "officially released"
date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecticut
Reports and Connecticut Appellate Reports. In the event of
discrepancies between the advance release version of an
opinion and the latest version appearing in the Connecticut
Law Journal and subsequently in the Connecticut Reports
or Connecticut Appellate Reports, the latest version is to
be considered authoritative.

The syllabus and procedural history accompanying the
opinion as it appears in the Connecticut Law Journal and
bound volumes of official reports are copyrighted by the
Secretary of the State, State of Connecticut, and may not
be reproduced and distributed without the express written
permission of the Commission on Official Legal Publica-
tions, Judicial Branch, State of Connecticut.

******************************************************

ESPINOSA, J., dissenting. The majority concludes that the appeal of the defendant, Jerzy G., is not moot pursuant to this court's decision in *State* v. *Aquino*, 279 Conn. 293, 901 A.2d 1194 (2006), because (1) the record establishes that the sole reason for his deportation was that he overstayed the term of his visitor visa without permission, and (2) there is a reasonable possibility that the pending criminal charge against him could be a significant factor in the decision as to whether he should be readmitted into the United States and, if he were readmitted, he could then be subject to criminal proceedings. Accordingly, the majority concludes that the Appellate Court had jurisdiction over the appeal under the collateral consequences doctrine, and it reverses the judgment of that court dismissing the appeal as moot. I would conclude that, to the contrary, the Appellate Court correctly determined that the defendant's appeal is moot because any collateral consequences to the defendant are "merely conjectural." *State* v. *Jerzy G.*, 162 Conn. App. 156, 166–67, 130 A.3d 303 (2015). Moreover, even if I were to agree with the majority that the appeal is not moot, I would conclude that the trial court did not abuse its discretion when it denied the defendant's motion to dismiss the sexual assault charge against him and terminated his participation in the accelerated rehabilitation program. Accordingly, I dissent.

The collateral consequences doctrine requires the party invoking the doctrine "to demonstrate more than an abstract, purely speculative injury . . . ." *Williams* v. *Ragaglia*, 261 Conn. 219, 227, 802 A.2d 778 (2002). "[F]or a litigant to invoke successfully the collateral consequences doctrine, the litigant must show that there is a reasonable possibility that prejudicial collateral consequences will occur. Accordingly, the litigant must establish these consequences by more than mere conjecture, but need not demonstrate that these consequences are more probable than not." *State* v. *McElveen*, 261 Conn. 198, 208, 802 A.2d 74 (2002).

I would note that the majority raises, but does not answer, the question of whether the burden is on the state to prove that there is no reasonable possibility of collateral consequences, "in light of the presumption of collateral consequences applied by this court . . . ." See footnote 6 of the majority opinion. The majority is apparently referring to the discussion in *McElveen* of a United States Supreme Court case distinguishing cases involving criminal convictions, which are "presumed to carry detrimental consequences," and cases involving revocations of parole, in which "the petitioner would be required to demonstrate the actual existence of collateral consequences to refute a finding of mootness."

*State* v. *McElveen*, supra, 261 Conn. 211, citing *Spencer* v. *Kemna*, 523 U.S. 1, 12–14, 118 S. Ct. 978, 140 L. Ed. 2d 43 (1988). This court rejected that distinction. *State* v. *McElveen*, supra, 211–12. In doing so, however, the court made it clear that it understood the distinction to be based, not on the party who bears the burden of proof, but on the degree of probability that collateral consequences will arise. Compare id., 211 (under *Spencer*, when defendant is challenging revocation of parole, he must "demonstrate the actual existence of collateral consequences"), with id., 212 (this court has always "relied upon the reasonable possibility of future adverse collateral consequences to avoid a dismissal on mootness grounds"). Indeed, as I have indicated, this court stated in *McElveen* that the burden of proving a reasonable possibility of future adverse collateral consequences is on the party raising the claim. Id., 208 (litigant invoking collateral consequences doctrine "must show that there is a reasonable possibility that prejudicial collateral consequences will occur"); compare *Perez* v. *Greiner*, 296 F.3d 123, 125 (2d Cir. 2002) (under United States Supreme Court precedent, "a criminal conviction is rendered moot by a release from imprisonment only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction" [internal quotation marks omitted]); see also *State* v. *McElveen*, supra, 211 (this court is not bound by justiciability requirements applicable to federal courts). Accordingly, I do not agree with the majority that this court's decision in *McElveen* creates doubt about who bears the burden of proving the reasonable possibility of collateral consequences in the present case.

In *State* v. *Aquino*, supra, 279 Conn. 298 n.3,[1] this court concluded that, in the absence of evidence that, but for the defendant's guilty plea, he would have been allowed to reenter the country, there was no basis to conclude that his petition for naturalization would be gravely impaired by the plea. Accordingly, the court concluded, that collateral consequence was speculative and did not prevent his appeal from being moot. See id. Similarly, in the present case, there is absolutely no evidence that, but for the pending sexual assault charge against the defendant, he would attempt and be permitted to reenter the country. Indeed, defense counsel has conceded that there is no evidence that the defendant has any current desire to do so; see *State* v. *Jerzy G.*, supra, 162 Conn. App. 166 n.5; and, even if he did, there is no guarantee that he will have the same desire after August, 2022, when he will be permitted to apply for reentry, and when he will be in his late sixties. Moreover, there is no way of knowing whether, if the status quo is maintained and the arrest warrant for the defendant on the charge of sexual assault in the fourth degree remains in effect, the defendant would be barred from reentering the country on that ground, particularly

when the defendant would be able to explain that he was granted accelerated rehabilitation on the charge, but was terminated from the program only because he was deported. Thus, any injury to the defendant as the result of the trial court's ruling is purely speculative. Accordingly, I would conclude that the defendant's appeal is moot.

I recognize that, because I would conclude that the defendant's appeal is moot, and because the parties have not briefed the merits of the defendant's appeal to the Appellate Court in their briefs to this court, there is no need for me to address the question of whether the trial court abused its discretion. Nevertheless, I feel compelled to observe that, in my view, the trial court acted well within its discretion when it terminated the program of accelerated rehabilitation and ordered the defendant to be rearrested. See *State* v. *Callahan*, 108 Conn. App. 605, 611, 949 A.2d 513 (termination of program of accelerated rehabilitation is subject to review for abuse of discretion), cert. denied, 289 Conn. 916, 957 A.2d 879 (2008); see also *State* v. *Santiago*, 318 Conn. 1, 140–41, 122 A.3d 1 (2015) (*Norcott* and *McDonald*, *Js.*, concurring) (addressing issue that was moot and that had not been briefed by parties because concurring justices "[felt] compelled" to do so). It was perfectly reasonable for the trial court to conclude that the defendant's deportation from this country as the result of his voluntary conduct in overstaying his visa in violation of federal law did not provide a valid excuse for his failure to comply with the conditions of the program of rehabilitation and, therefore, did not warrant either the dismissal of the charges against him based on the fiction that he successfully completed the program or an indefinite continuance of the case on the speculative assumption that he may attempt to return to this country. "The defendant has cited no authority for the proposition that the accelerated rehabilitation program gives criminal defendants the authority to frame the conditions with which they are prepared to comply in order to demonstrate their rehabilitation. To the contrary, the law is clear that the only choice that the statute gives such defendants is to accept and to abide by the conditions set by the court, or to reject the conditions and to face further criminal prosecution." *State* v. *Callahan*, supra, 613. Although it is conceivable that this principle might not apply when a defendant is prevented by circumstances entirely beyond his control, such as a serious injury or illness, from complying with the conditions of a program of accelerated rehabilitation, that is not the case here. In my view, when the defendant chose to stay in this country illegally, he assumed the risk of the adverse consequences of that decision, including the risk that his deportation would deprive him of statutory benefits, such as participation in a program of accelerated rehabilitation pursuant to General Statutes § 54-56e, for

which he might otherwise be eligible.[2] In this regard, I would note that accelerated rehabilitation is not a right, but is purely a matter of judicial discretion. See id. ("Accelerated rehabilitation is not a right at all. It is a statutory alternative to the traditional course of prosecution available for some defendants and totally dependent upon the trial court's discretion." [Internal quotation marks omitted.]). It is clear to me, therefore, that the trial court's ruling was logical, it was based on proper factors and it resulted in no injustice. See *In re Shaquanna M.*, 61 Conn. App. 592, 603, 767 A.2d 155 (2001) (abuse of discretion exists when court "has decided the matter so arbitrarily as to vitiate logic, or has decided it based on improper or irrelevant factors"); id., 604 ("[a]n abuse of discretion occurs when an injustice has been done"). Accordingly, there was no abuse of discretion.

[1] The facts and procedural history of *Aquino* are set forth in the majority opinion.

[2] The cases cited by the amicus curiae, American Immigration Lawyers Association, for the proposition that deportation cannot operate to deprive a person of a statutory benefit for which he would otherwise be eligible are easily distinguishable. See *Lari* v. *Holder*, 697 F.3d 273, 278 (5th Cir. 2012) (under plain meaning of federal statute, alien's ability to file motion to reconsider removal order is not contingent on presence in United States); *Lin* v. *United States Attorney General*, 681 F.3d 1236, 1238, 1240 (11th Cir. 2012) (federal statute confers authority on federal Board of Immigration Appeals to entertain motion to reopen removal order after movant has been deported, and that authority cannot be eliminated by regulation); *Contreras-Bocanegra* v. *Holder*, 678 F.3d 811, 817–18 (10th Cir. 2012) (same); *Prestol Espinal* v. *Attorney General of the United States*, 653 F.3d 213, 218, 223 (3d Cir. 2011) (same); *Reyes-Torres* v. *Holder*, 645 F.3d 1073, 1077 (9th Cir. 2011) (same); *Luna* v. *Holder*, 637 F.3d 85, 100 (2d Cir. 2011) (same); *Pruidze* v. *Holder*, 632 F.3d 234, 237–38 (6th Cir. 2011) (same); *Marin-Rodriguez* v. *Holder*, 612 F.3d 591, 593–94 (7th Cir. 2010) (same); *William* v. *Gonzales*, 499 F.3d 329, 333–34 (4th Cir. 2007) (same); see also *Judulang* v. *Holder*, 565 U.S. 42, 58–59, 132 S. Ct. 476, 181 L. Ed. 2d 449 (2011) ("comparable-grounds rule" for determining who is eligible to seek discretionary relief from deportation is invalid under federal Administrative Procedure Act as being arbitrary and capricious). These cases from the federal Circuit Courts of Appeals merely stand for the proposition that, under the governing federal statute, the Board of Immigration Appeals has jurisdiction to consider motions to reconsider and to reopen a removal order even after the subject of the order has been deported, and that statutory grant of authority cannot be eliminated by regulation. It does not follow that deportation can *never* be a proper consideration when courts are determining eligibility for statutory benefits. The United States Supreme Court in *Judulang* merely applied the principle that an agency rule cannot be arbitrary and capricious. That principle is not applicable here because no agency rule is under consideration and because a determination that a program of accelerated rehabilitation must be terminated when the participant, as the result of his own voluntary conduct, cannot successfully complete it is neither arbitrary nor capricious.